Jack A. Atnip, CA Bar No. 204457
*jatnip@hjlawfirm.com*
**HELLMUTH & JOHNSON, PLLC**
8050 West 78th Street
Edina, Minnesota  55439
Tel: (952) 941-4005
Fax:  (952) 941-2337

Additional Counsel Listed on Signature Page
*Attorneys for Plaintiffs*

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| RUDOLF GRODZEN; and VIKRAM CHATRATH, | Court File No.: _____ |
| Plaintiffs, on behalf of themselves and all others similarly situated, | |
| | **CLASS ACTION COMPLAINT** |
| v. | **JURY TRIAL DEMANDED** |
| BMW AG; BMW NORTH AMERICA, LLC; VOLKSWAGEN AG; VOLKSWAGEN GROUP OF AMERICA, INC.; AUDI AG; AUDI OF AMERICA, INC.; AUDI OF AMERICA, LLC; DR. ING. H.C. F. PORSCHE AG; PORSCHE CARS NORTH AMERICA, INC.; BENTLEY MOTORS LIMITED; DAIMLER AG; MERCEDES-BENZ USA, LLC; MERCEDES-BENZ VANS, LLC; MERCEDES-BENZ U.S. INTERNATIONAL, | |
| Defendants. | |

CLASS ACTION COMPLAINT

# TABLE OF CONTENTS

I.   NATURE OF THE ACTION ........................................................................................4

II.  JURISDICTION AND VENUE ..................................................................................7

III. PARTIES ....................................................................................................................9

    A.   Plaintiffs ............................................................................................................9

    B.   Defendants.........................................................................................................10

        1.   THE VOLKSWAGEN DEFENDANTS .......................................................... 11

        2.   THE AUDI DEFENDANTS ........................................................................ 12

        3.   THE PORSCHE DEFENDANTS .................................................................. 13

        4.   DEFENDANT BENTLEY ............................................................................ 13

        5.   DEFENDANT DAIMLER ............................................................................ 14

        6.   THE MERCEDES-BENZ DEFENDANTS ..................................................... 14

        7.   THE BMW DEFENDANTS ....................................................................... 15

    C.   Agents and Co-Conspirators .............................................................................16

        1.   THE BOSCH CO-CONSPIRATORS ............................................................ 16

        2.   THE IAV CO-CONSPIRATORS ................................................................. 17

        3.   THE VDA CO-CONSPIRATORS ............................................................... 18

IV.  FACTUAL BACKGROUND .....................................................................................19

    A.   The Market for German Luxury Vehicles..........................................................19

    B.   The Nature of the Cartel ....................................................................................22

    C.   Agreements to Limit Competition in the Market for German Luxury Vehicles........................27

    D.   Defendants' Collusion Relating to Emission Control Systems.................................28

    E.   Agreement to Limit Technology other than Emissions Control Systems .................................33

    F.   Defendants Targeted Marketing and Sales to U.S. Consumers .................................36

    G.   Each Defendant Met with U.S. Regulators to Obtain Permission to Sell Vehicles in the United States ................................41

    H.   Defendants' History of Collusion and Wrongdoing ....................................44

V.   THE STATUTE OF LIMITATIONS DOES NOT BAR PLAINTIFFS' CLAIMS .........................51

    A.   The Statute of Limitations Did Not Begin to Run Since Plaintiffs Did Not and Could Not Have Discovered Their Claims with Reasonable Diligence Until July 21, 2017. .................51

    B.   Defendants' Fraudulent Concealment Tolled the Statute of Limitations.................................53

VI.  CLASS ACTION ALLEGATIONS ............................................................................56

    A.   Nationwide Injunctive Relief Class...................................................................56

    B.   Damages Class ..................................................................................................57

CLASS ACTION COMPLAINT

C.  Common Questions of Law and Fact Predominate.............................................62

D.  Typicality ................................................................................................................63

E.  Adequacy .................................................................................................................64

F.  Superiority ..............................................................................................................64

VII.  ANTITRUST INJURY .................................................................................................65

VIII. VIOLATION OF THE SHERMAN ACT ...................................................................67

IX.  VIOLATIONS OF STATE ANTITRUST LAWS ......................................................69

X.  VIOLATION OF STATE CONSUMER PROTECTION LAWS ...............................100

XI.  UNJUST ENRICHMENT ...........................................................................................137

XII.  PRAYER FOR RELIEF .............................................................................................138

XIII. JURY DEMAND .........................................................................................................140

CLASS ACTION COMPLAINT

Plaintiffs Rudolf Grodzen and Vikram Chatrath (collectively, "Plaintiffs"), on behalf of themselves and all others similarly situated, bring this class action for damages and injunctive relief, pursuant to federal antitrust law and state antitrust, unfair competition, and consumer protection laws.  Plaintiffs allege the following based on information and belief, investigation of counsel, and publicly available information. Because investigations into the named defendants' (and their co-conspirators') conduct are ongoing by the European Commission, German Federal Cartel Office, and United States Department of Justice, Plaintiffs reserves the right to amend and supplement these allegations.

## I.    NATURE OF THE ACTION

1.    For at least the last twenty years, German automobile manufacturers have engaged in an extensive, secret antitrust conspiracy to artificially maintain the prices of their luxury vehicles above competitive levels.  The co-conspirator German automobile manufacturers and their subsidiaries include: Volkswagen AG, Volkswagen Group of America, Inc. ("Volkswagen" or the "Volkswagen Defendants" or the "VW Defendants"); Audi AG, Audi of America, Inc., and Audi of America, LLC ("Audi" or the "Audi Defendants"); Dr. Ing. h.c. F. Porsche AG and Porsche Cars North America, Inc. ("Porsche" or the "Porsche Defendants); Bentley Motors Limited ("Bentley"); Daimler AG, Mercedes Benz USA, LLC, Mercedes-Benz U.S. International, Inc., Mercedes-Benz Vans LLC ("Daimler" or the "Daimler Defendants"), Bayerische

Motoren Werke AG and BMW North America, LLC ("BMW" or the "BMW Defendants") (collectively "Defendants"). Defendants have touted the sophistication of German engineering as a key selling point for their vehicles, leading U.S. consumers to believe that fierce competition among them has led to competitive pricing, innovation, and superior product offerings. In truth, Defendants secretly agreed to eliminate or severely reduce such competition. Coordinated action on a large scale enabled Defendants to impose a German automobile price premium on consumers premised on representations of superior German engineering, while internally and mutually agreeing via trade group meetings and other communications to place limits on common vehicle component innovations and coordinate virtually every aspect of the manufacture and sale of their luxury vehicles. Robert Bosch GmbH, as a key supplier to Defendants, played a critical role in enabling and concealing the cartel, also profiting enormously from it.

2.      The conspiracy described herein allowed Defendants to market German Luxury Vehicles (as defined below) in the United States and charge premium prices, the "German Premium" for supposedly "cutting edge" technological innovations.[1] The truth was quite different.

---

[1] The "German Premium" refers to inflated prices paid by purchasers or lessees of gas and diesel vehicles manufactured and sold by Defendants during the Class Period. Further, as used herein, "Diesel Premium" refers to inflated prices paid by purchasers or lessees of diesel vehicles manufactured and sold by Defendants during the Class Period.

---

CLASS ACTION COMPLAINT

3.     Beginning by at least 1996 and continuing through the present (the "Class Period"), Defendants formed working groups and negotiated clandestine, exclusive agreements and shared information with each other about the development of their German Luxury Vehicle technology, costs, suppliers, markets, emissions equipment, and other competitive attributes as detailed below.

4.     The scope of the cartel was immense; Defendants, until recently, were successful in keeping the facts from the public, even in the face of a related and highly public conspiracy to fool U.S. regulators about diesel emissions.

5.     For purposes of this Complaint, "German Luxury Vehicles" refers to passenger vehicles leased or sold in the United States by Defendants under the brands Audi, Bentley, BMW, Mercedes-Benz, and Porsche during the time of Defendants' conspiracy.[2]

6.     By reason of this conduct, Defendants' sales of German Luxury Vehicles in the United States, its territories, and the District of Columbia were done in violation of Section 1 of the Sherman Antitrust Act (15 U.S.C. § 1) and numerous states' antitrust, unfair competition, and consumer protection laws.

---

[2] Defendant Daimler owns the Mercedes-Benz brand.  Volkswagen owns the Audi, Porsche and Bentley brands.

CLASS ACTION COMPLAINT

7.     As a result of Defendants' long-running contract, combination, or conspiracy, Plaintiffs and Class Members paid unlawfully inflated prices for the German Luxury Vehicles.

## II.     JURISDICTION AND VENUE

8.     Plaintiffs bring this action under Section 16 of the Clayton Act (15 U.S.C. § 26) for injunctive and equitable relief for Defendants' violations of Section 1 of the Sherman Act (15 U.S.C. § 1). The Court has original federal question jurisdiction over the Sherman Act claim pursuant to 28 U.S.C. § 1331 and Section 16 of the Clayton Act (15 U.S.C. § 26).

9.     Plaintiffs also assert claims for actual and exemplary damages pursuant to state antitrust, unfair competition, and consumer protection laws, and seek to obtain restitution, recover damages, and secure other relief against Defendants for violations of those state laws. Plaintiffs also seek attorneys' fees, costs, and other expenses under federal and state law.

10.     The Court has subject matter jurisdiction over the federal claim pursuant to sections 1 and 16 of the Clayton Act (15 U.S.C. §§ 15, 26) and 28 U.S.C. §§ 1331, 1337.

11.     This Court also has subject matter jurisdiction over the state law claims pursuant to 28 U.S.C. §§ 1332(d) and 1367, in that this is a class action in which the matter or controversy exceeds the sum of $5,000,000.00, exclusive of interest and costs,

---

and in which some members of the proposed Classes are citizens of a state different from Defendants' citizenships.

12.    Venue is proper in this District under Sections 4(a) and 12 of the Clayton Act (15 U.S.C. §§ 12, 22), and 28 U.S.C. § 1391(b), (c), and (d) because Defendants regularly transact business in this District,  a substantial part of the events giving rise to Plaintiffs' claims occurred in this District, a substantial portion of the affected interstate trade occurred in this District, and one or more of the Defendants are licensed to do business in, are doing business in, or had agents in this District. Specifically, Defendants participated in trade meetings, car shows, conventions, and other events in this District. Additionally, Defendants have sold hundreds of millions of dollars of German Luxury Vehicles in this District since the 1990s.

13.    This Court has personal jurisdiction over Defendants because the wrongdoing alleged herein was directed at consumers in the United States and in this District. Defendants conspired to evade emissions standards imposed by United States and state regulators. As alleged in further detail below, Defendants misled United States customers and regulators alike.

14.    Defendants engaged in conduct both inside and outside of the United States that caused direct, substantial and reasonably foreseeable and intended anticompetitive effects upon interstate commerce within the United States. Defendants, directly and through their agents and co-conspirators, engaged in anticompetitive activities affecting

---

CLASS ACTION COMPLAINT

all states, as they coordinated activities, *inter alia*, related to Defendants' vehicle technology, costs, suppliers and markets.

15.   The activities of Defendants and their co-conspirators were within the flow of, were intended to, and did have, a substantial effect on interstate commerce of the United States and in this District. Defendants' products are sold in the flow of interstate commerce.

16.   Defendants BMW, Daimler and Volkswagen manufacture some of their German Luxury Vehicles in the U.S. and placed them in interstate commerce. Those German Luxury Vehicles manufactured abroad by Defendants and sold in the United States are goods brought into the United States for sale, and therefore constitute import commerce.

17.   This unlawful conduct proximately caused antitrust injury in the form of supra-competitive prices and suppressed innovation to Plaintiffs and members of the Classes who purchased or leased new or used German Luxury Vehicles.

## III.   PARTIES

### A.   Plaintiffs

18.   Plaintiff Rudolf Grodzen resides in Porter Ranch, California, located in Los Angeles County within this District.  In 2016, Mr. Grodzen leased a new 2016 BMW 328d with a diesel engine from Valencia BMW, located in Santa Clarita, California, also within Los Angeles County.

19.     Plaintiff Vikram Chatrath resides in Minnesota.  In December 2016, Dr. Chatrath leased a new 2017 Mercedes-Benz GLE with a gasoline engine from Luxury Auto Mall of Sioux Falls, located in Sioux Falls, South Dakota.  In 2017, Dr. Chatrath leased a new 2017 Porsche 718 Cayman with a gasoline engine from Porsche St. Paul, located in Maplewood, Minnesota.

20.     As alleged in further detail below, Plaintiffs were injured by suppressed innovation and paying inflated prices for their German Luxury Vehicles. Plaintiffs paid the German Premium for their German Luxury Vehicles that were marketed as having advanced German technology.  Those who purchased a vehicle with a diesel engine paid a Diesel Premium. The premiums paid by Plaintiffs reflected Defendants' ability to price German Luxury Vehicles as though Defendants competed to deliver cutting edge technology when, unbeknownst to Plaintiffs, they did not.

**B.     Defendants**

21.     When Plaintiffs refer to a corporate family of companies by a single name in the Complaint, they are alleging that one or more employees or agents of entities within that corporate family engaged in conspiratorial acts on behalf of every company in that family. The individual participants in the unlawful acts did not distinguish between the entities within a corporate family. The individual participants entered into agreements on behalf of their respective corporate families. As a result, those agents represented the

entire corporate family with respect to such conduct, and the corporate family was party to the agreements that those agents reached.

### 1. THE VOLKSWAGEN DEFENDANTS

22. Defendant Volkswagen AG is a German corporation with its principal place of business in Wolfsburg, Germany. Volkswagen AG is one of the largest automobile manufacturers in the world and is in the business of designing, developing, manufacturing, and selling automobiles. Volkswagen AG is the parent corporation of Volkswagen Group of America, Inc., Audi AG, Porsche AG, and Bentley. In 2016, Volkswagen AG was the largest auto manufacturer in the world. Volkswagen AG's revenues in 2016 were more than €217 billion. During the Class Period, Volkswagen AG was continuously doing business through a chain of distributors and dealers in the United States, including within this District, by advertising, promoting, distributing, and selling Volkswagen cars and those of Volkswagen's subsidiaries during the Class Period.

23. Defendant Volkswagen Group of America, Inc. ("VW America") is a New Jersey corporation with its principal place of business in Herndon, Virginia. VW America conducts business in all fifty of the United States and the District of Columbia. During the Class Period, VW America advertised, promoted, distributed, and sold at least Volkswagen-branded vehicles throughout the United States, including in this District during the Class Period.

---

CLASS ACTION COMPLAINT

### 2. THE AUDI DEFENDANTS

24.     Defendant Audi AG is incorporated in Germany with its principal place of business in Ingolstadt, Germany. Audi AG is the parent company of Audi of America, Inc. and Audi of America, LLC. Audi AG directs the operations of Audi of America, Inc. and Audi of America, LLC, both of which act as its agents in the United States. Audi AG is a wholly owned subsidiary of Volkswagen AG. Audi AG designed, developed, advertised, promoted, manufactured, and distributed its German Luxury Vehicles at issue which were purchased or leased by Class Members throughout the United States, including in this District during the Class Period.

25.     Defendant Audi of America, Inc. is a New Jersey corporation doing business in every state and the District of Columbia, with its principal place of business in Herndon, Virginia. During the Class Period, Audi of America, Inc. was continuously doing business through a chain of distributors and dealers in the United States, including within this District, by advertising, promoting, and selling its German Luxury Vehicles at issue which were purchased or leased by Class Members throughout the United States, including in this District during the Class Period.

26.     Defendant Audi of America, LLC is a Delaware corporation doing business in every state and the District of Columbia, with its principal place of business in Herndon, Virginia. Audi of America, LLC is a wholly owned United States subsidiary of Audi AG that engages in the business of advertising, promoting, and selling its German

---

CLASS ACTION COMPLAINT

Luxury Vehicles at issue which were purchased or leased by Class Members throughout the United States, including in this District during the Class Period.

### 3.   THE PORSCHE DEFENDANTS

27.     Defendant Dr. Ing. h.c. F. Porsche AG ("Porsche AG") is a German corporation with its principal place of business located in Stuttgart, Germany. Porsche AG is a wholly owned subsidiary of Volkswagen AG. Porsche AG designed, developed, manufactured, and sold certain of its German Luxury Vehicles at issue which were purchased or leased by Class Members throughout the United States, including in this District during the Class Period.

28.     Defendant Porsche Cars North America, Inc. is incorporated in Delaware with its principal place of business in Georgia. Porsche Cars North America, Inc. is a wholly owned U.S. subsidiary of Porsche AG and advertises, markets, and sells its German Luxury Vehicles at issue which were purchased or leased by Class Members throughout the United States, including in this District, during the Class Period

### 4.   DEFENDANT BENTLEY

29.     Bentley Motors Limited Company ("Bentley") is organized under the laws of the United Kingdom. Bentley has been a subsidiary of Volkswagen AG since 1998. In 2012, Bentley moved its U.S. headquarters to the offices of Volkswagen Group of America in Herndon, Virginia.  Prior to this change, Bentley was headquartered in Boston, Massachusetts.

---

CLASS ACTION COMPLAINT

### 5.   DEFENDANT DAIMLER

30.     Defendant Daimler AG ("Daimler" or "Daimler AG") is a foreign corporation headquartered in Stuttgart, Germany. Daimler AG designed, engineered, manufactured, tested, marketed, supplied, sold, and distributed its German Luxury Vehicles at issue which were purchased or leased by Class Members throughout the United States, including in this District during the Class Period. During the Class Period, Daimler AG was continuously doing business through a chain of distributors and dealers in the United States, including within this District, by selling, advertising, promoting and distributing Mercedes-Benz vehicles. Daimler AG also developed, reviewed, and approved the marketing and advertising campaigns designed to sell the Mercedes-Benz automobiles at issue. Through its wholly owned subsidiaries and agents, Daimler AG markets its products in a continuous manner in the United States, including in this District during the Class Period.

31.     Daimler AG controls its subsidiary Mercedes-Benz USA, LLC, which is the sole distributor for Mercedes-Benz Luxury Vehicles in the United States. Daimler AG owns 100% of the shares of Mercedes-Benz USA, LLC.

### 6.   THE MERCEDES-BENZ DEFENDANTS

32.     Defendant Mercedes-Benz USA, LLC ("Mercedes-Benz USA") is a Delaware limited liability corporation with its principal place of business in Atlanta, Georgia. Mercedes-Benz USA and its related companies designed, manufactured,

---

CLASS ACTION COMPLAINT

marketed, distributed, and sold its German Luxury Vehicles at issue which were purchased or leased by Class Members throughout the United States, including in this District during the Class Period.

33.    Defendant Mercedes-Benz U.S. International, Inc. is an Alabama corporation with its principal place of business in Vance, Alabama. Mercedes-Benz U.S. International, Inc. is a wholly owned subsidiary of Daimler AG.

34.    Defendant Mercedes-Benz Vans, LLC is a Delaware limited liability corporation with its principal place of business in Ladson, South Carolina. Mercedes-Benz Vans, LLC is a wholly owned U.S. subsidiary of Daimler AG.

### 7.    THE BMW DEFENDANTS

35.    Defendant Bayerische Motoren Werke AG ("BMW AG") is a German holding company.  BMW AG is a vehicle manufacturer headquartered in Germany. BMW AG and its related companies designed, manufactured, marketed, distributed, and sold its German Luxury Vehicles at issue which were purchased or leased by Class Members throughout the United States including in this District during the Class Period. BMW AG's revenue in 2016 was €94.16 billion (approximately $110 billion). BMW AG's earnings before interest and taxes (EBIT) in 2016 was €9.39 billion (approximately $11 billion).

36.    Defendant BMW of North America, LLC ("BMW of North America") is a Delaware limited liability corporation. BMW of North America's Corporate

---

CLASS ACTION COMPLAINT

Headquarters, Eastern Regional Headquarters, and Technical Training Center are located in Woodcliff Lake, New Jersey. A BMW of North America Regional Distribution Center is in Nazareth, Pennsylvania. BMW of North America was established in 1975 as the United States importer of BMW vehicles.

### C.     Agents and Co-Conspirators

37.     Each Defendant acted as the principal of or agent for the other Defendant with respect to the acts, violations, and common course of conduct alleged herein.

38.     On information and belief, at all relevant times, other entities and/or persons, willingly conspired with Defendants in their unlawful violations of federal and state laws. All allegations made herein against Defendants are also made against these unnamed co-conspirators.

### 1.     THE BOSCH CO-CONSPIRATORS

39.     Robert Bosch GmbH is a German multinational engineering and electronics company headquartered in Gerlingen, Germany. Robert Bosch GmbH, directly and/or through its North American subsidiary Robert Bosch LLC, designs, manufactures, develops, and supplies automotive technology.

40.     Robert Bosch LLC (together with Robert Bosch GmbH, "Bosch") is a Delaware limited liability company with its principal place of business in Farmington Hills, Michigan. Robert Bosch LLC is wholly owned and controlled by Robert Bosch GmbH.

---

41.    Robert Bosch LLC worked in conjunction with Robert Bosch GmbH to design, manufacture, develop, and supply automotive technology to Defendants for use in the vehicles at issue. Upon information and belief, Bosch was a preferred supplier of the cartel. As set forth herein, Bosch played a key role in the development of an illegal "defeat device" to fool U.S. regulators about the actual emissions of certain diesel engines.

### 2.    THE IAV CO-CONSPIRATORS

42.    IAV Automotive Engineering, Inc. ("IAV-AE") is a Michigan corporation with its principal place of business in Northville, Michigan. IAV-AE is a United States subsidiary of IAV GmbH. Audi, Bosch, and Volkswagen are clients of IAV-AE.

43.    IAV GmbH is the parent corporation of IAV-AE (together, with IAV-AE, "IAV" or the "IAV Co-Conspirators"). IAV GmbH is a privately held engineering company that is headquartered in Berlin, Germany. Volkswagen AG holds a 50% ownership share of IAV GmbH.[3] IAV GmbH specializes in powertrain, electronic, and vehicle development and has at least three offices and one subsidiary in the United States. Audi, BMW, Bosch, and Volkswagen are clients of IAV GmbH.

44.    The IAV Co-Conspirators collaborated closely with Defendants and Bosch to develop software used in engine control units, and were key players in the

---

[3] The other entities that own IAV GmbH and their respective shares are as follows: Continental Automotive GmbH (20%), Freudenberg & Co. KG (10%), Schaeffler Technologies AG & Co. KG (10%), and SABIC Innovative Plastics B.V. (10%).

---

CLASS ACTION COMPLAINT

development of the defeat devices at Audi, Porsche, and Volkswagen. As part of a fraud investigation by the German public prosecutor in Braunschweig, Germany, at least 37 offices and private homes in Wolfsburg, Braunschweig, and Gifhorn were searched during the week of January 23, 2017. According to the German Press Agency, the raids were aimed in part at IAV.

### 3.     THE VDA CO-CONSPIRATORS

45.     The Verband der Automobilindustrie ("VDA"), or German Automobile Association, is an "eingetragener Verein," or registered association or incorporated association, with its headquarters in Berlin, Germany.[4] The VDA consists of more than 620 companies involved in producing goods and services for the automotive industry in Germany. The members are divided into three manufacturer groups: automobile manufacturers, automotive suppliers, and companies that make trailers, special bodies, and buses.

46.     The VDA currently has about 35 "Arbeitskreise," or working groups, some of which have sub-committees or *ad hoc* working groups. The majority of the VDA working groups consists of members of all three German Luxury Vehicle manufacturer groups and pursues a common purpose. The working groups include: Aftermarket Committee; Working Group for Container Standardization; Working Group of Manufacturer Group II; Working Group for CAD/CAM; Working Group Digital Factory;

---

[4]     COMMON REGISTER PORTAL OF THE GERMAN FEDERAL STATES, https://www.handelsregister.de/rp_web/welcome.do (last visited August 11, 2017).

Working Group for Electrical Engineering; Working Group for Trade of Manufacturer Group III; Working Group for Refrigerants; Press Committee; Legal Committee; Raw Materials Committee; and Committee for Technology, Safety and the Environment, among others.

47.    Upon information and belief, certain VDA working group meetings provided Defendants the opportunity to conspire and collude by agreeing to restrict developments, limit cost, and/or curtail competition among suppliers. Each member of these groups had the opportunity to discuss sensitive or confidential commercial information, including price, cost, suppliers, and supplies. German media reports suggest they did just that.

48.    Upon information and belief, the cartel involved numerous other persons, partnerships, sole proprietors, firms, corporations, and individuals not named as defendants in this lawsuit. Individuals, the identities of which are presently unknown, have participated as co-conspirators with Defendants in the offenses alleged in this Complaint, and have performed acts and made statements in furtherance of the conspiracy or in furtherance of the anticompetitive conduct.

## IV.    FACTUAL BACKGROUND

### A.    The Market for German Luxury Vehicles

49.    German Luxury Vehicles are a differentiated product market. By reputation German Luxury Vehicles are said to be among the best-engineered vehicles in the world.

---

CLASS ACTION COMPLAINT

In the United States, members of the Classes paid a premium for German Luxury Vehicles.

50.     German Luxury Vehicles are distinct from those manufactured by non-German competitors.  Defendants have spent many millions of dollars advertising the virtues of German engineering and German Luxury Vehicles.

51.     Defendants know and understand that their closest competition among U.S. consumers are other Defendants. This is established by Defendants' practice of opening up dealerships in locations where their fellow cartel members have been operating. Consumer preference for German Luxury Vehicles indicates cohesiveness; second-choice surveys of German Luxury Vehicle purchases consistently show that consumers who purchased German Luxury Vehicles would have purchased from another Defendant.

52.     Defendants limited manufacturer membership in the conspiracy to themselves. During the Class Period, Defendants rejected requests from Jaguar, Volvo, Renault, and Fiat to join their exchange of information.

53.     Due to their unique place in the U.S. market, brand recognition, and marketing campaigns, Defendants enjoy price inelasticity for the German Luxury Vehicles. Price inelasticity means that because demand for German Luxury Vehicles is strong, consumers will continue to purchase German Luxury Vehicles even if prices increase or are high relative to other vehicles.

---

CLASS ACTION COMPLAINT

54.    The promise of innovative German engineering also makes German Luxury Vehicles price inelastic. This promise allows Defendants to demand a premium from members of the Classes in the prices for German Luxury Vehicles. That Defendants have shared cost information with one another ensures that German Luxury Vehicles are consistently priced at a premium.

55.    Due to the conspiracy alleged herein, the normal pace of innovation was replaced by cartel-dictated staging. Plaintiffs and members of the Classes paid the German Premium for German Luxury Vehicles because Defendants had an alleged reputation for engineering excellence and cutting edge technology due to their marketing campaigns. The premiums paid are supra-competitive, however, because Defendants used their market power to suppress competition and innovation for the very technological advances consumers sought.

56.    High barriers to entry exist in the market for German Luxury Vehicles. Firms entering this market need to invest hundreds of millions of dollars or billions in research and development, including engineering talent. New entrants would need to invest hundreds of millions of dollars or billions more to build facilities and obtain the raw materials in order to produce competitive vehicles. Notably, no non-German manufacturer was invited into Defendants' cartel, and no other significant German automobile manufacturer competed in any material way in U.S. sales during the Class Period.

---

CLASS ACTION COMPLAINT

**B.**     **The Nature of the Cartel**

57.     The conspiracy alleged herein was initiated by at least 1996, at a time when Japanese automotive manufacturers were dominating U.S. markets. Defendants lagged behind the Japanese automotive manufacturers in the 1990s. Defendants sought to reverse this trend, meeting hundreds of times to exchange competitively sensitive information about costs, technologies, and virtually every important element of design and manufacture of German Luxury Vehicles.

58.     Meeting through Arbeitskreise of the VDA in Germany and worldwide, engineers and others at each of these companies reached secret agreements with each other to limit technological innovation and to share competitively sensitive commercial information about the key aspects of Defendants' design and manufacture of automobiles. These working groups, some of which were named above, included technologies central to the claimed superiority of Defendants' market brand in engineering and design.

59.     Illegal agreements were negotiated via teleconferences, email and in-person meetings at company headquarters, roadshows, auto shows, and meetings of other organizations, including but not limited to the VDA and the German Abgaszentrum der Automobilindustrie ("ADA"). The ADA is a trade organization focusing on emissions control systems. Up until recently, the ADA's website described its "objective" as "pre-competitive cooperation in the field of exhaust aftertreatment of passenger cars with

---

CLASS ACTION COMPLAINT

petrol and diesel engines."[5] Subsequently, the ADA modified its website to describe its

work as "pre-development in the field of exhaust gas aftertreatment on petrol and diesel

engines in passenger cars,"[6] conspicuously eliminating reference to "pre-competitive

cooperation."

     60.    These were not isolated meetings; they began as early as 1996 and continued

to the present but until at least 2014, when Daimler first secretly reported to German

authorities that it had engaged in such a cartel, seeking leniency from the German

government.[7]  On July 4, 2016, Volkswagen AG similarly sought leniency through a

submission admitting it had participated in suspected antitrust violations.[8] Volkswagen

---

[5]      ABGASZENTRUM         DER         AUTOMOBILINDUSTRIE,
http://www.abgaszentrum.de/firmenprofil.html (visited August 8, 2017) (as translated by
Google Chrome browser).

[6]      ABGASZENTRUM         DER         AUTOMOBILINDUSTRIE,
http://www.abgaszentrum.de/karriere.html (last visited August 21, 2017) (as translated by
Google Chrome browser).

[7] "The Bundeskartellamt can grant cartel participants, who by their cooperation
contribute to uncovering a cartel, immunity from or a reduction of fines.  The Lenience
Programme sets the conditions under which immunity from or a reduction of fines can be
granted."
http://www.bundeskartellamt.de/EN/Banoncartels/Leniency_programme/leniencyprogra
mme_node.html (last visited August 8, 2017).

[8] *See, e.g.,* F. Dohmen, D. Hawranek, *Collusion Between German's Biggest Carmakers*,
SPIEGEL ONLINE (August 27, 2017), http://www.spiegel.de/international/germany/the-
cartel-collusion-between-germany-s-biggest-carmakers-a-1159471.html    (last    visited
August 27, 2017) ("In a brief dated July 4, 2016, Volkswagen issued what amounts to a
voluntary declaration of its 'participation in suspected cartel infringements.'").

---

CLASS ACTION COMPLAINT

submitted an additional statement to Germany's Federal Cartel Office the week of July 24, 2017.

61.    There is an active investigation by the European Commission ("E.C.") concerning the conspiracy. On June 23, 2016, the German Federal Cartel Office raided the offices of six companies, including some Defendants, in investigating a steel cartel. That probe appears to relate to Defendants' collusion to extract price concessions from steel manufacturers.

62.    In an article first published on July 21, 2017, the German magazine *Der Spiegel* reported that Volkswagen informed the E.C. that Defendants met in "over 60 working groups" of the VDA, many in which Defendants shared competitively sensitive information with each other.[9] Volkswagen admitted that "in the past five years, over 1,000 meetings took place."[10]

63.    A key meeting in the development of the cartel occurred on April 5, 2006. According to minutes of that meeting, representatives from each Defendant, including directors of various divisions, met to discuss the size of urea tanks, which hold neutralizing agents for diesel exhaust emissions. Defendants agreed to reduce the costs

---

[9] Frank Dohmen, Dietmar Hawranek, *Das Auto-Syndikat*, DER SPIEGEL, 30/2017, at 12, *available at* https://magazin.spiegel.de/SP/2017/30/152270400/index.html (subscription only) (last visited August 7, 2017) (hereinafter, "*Das Auto-Syndikat*").

[10] *Id.*

---

CLASS ACTION COMPLAINT

associated with having different sizes of urea tanks. It appears that these agreements to restrict tank size—which was calculated at the time to save 80 euros per vehicle—were the impetus for the creation of the "defeat device" that was the subject matter of the litigation in *In re: Volkswagen "Clean Diesel" Marketing, Sales Practices and Product Liability Litigation*, Case No. 3:15-md-2672 (N.D. Cal.) (hereinafter, "*Volkswagen Litigation*").

64.    An additional component of the cartel was the restriction of acceptable suppliers. In secret, closed meetings, Defendants identified certain key suppliers—such as Robert Bosch GmbH—that would supply Defendants with specific products. Suppliers not selected were excluded from participation in the German Luxury Vehicle market effectively suppressing innovation and price competition.

65.    Another component of the cartel was capping costs and limiting innovation in emissions control systems. For example, Defendants agreed to limit tank size for neutralizing agents for emissions (for example, AdBlue, a registered trademark of VDA) in the European Union (E.U.) and the United States. Such agreements clearly inhibit innovation in the field of emissions controls. After a meeting of Daimler, BMW, Audi, Volkswagen, and Bosch on October 19, 2006, a VW manager wrote, "Everybody wants a limitation" of the neutralizing agent injection "because of the limited size of the urea tank. No one wants to report the real motivation of this limitation to the authorities

(CARB, EPA)." There can be no mistake that the cartel was thus aimed at vehicles sold in the United States.

66.    Emissions control systems were but one aspect of the cartel. Among the technological innovations inhibited by Defendants' contract, combination, or conspiracy was the operation of the roofs of convertibles. Specifically, Defendants agreed that they would not design convertible roofs that could be opened while vehicles were traveling at speeds greater than 50 kilometers per hour. Other affected technologies include suspension, electronic systems, body design, transmission, and brakes. Additionally, Defendants shared confidential information about their respective suppliers and agreed on limited, specific suppliers for specific product and geographic markets. Defendants also shared sensitive technical data, including testing results for specific products. Upon information and belief, sometimes Defendants would forego testing altogether, instead relying on the testing performed by each other as alleged "competitors." Minutes for VDA working group meetings reflect these illegal agreements.

67.    As revealed in the *Volkswagen Litigation*, Volkswagen used technology and test results it obtained from its competitors in order to create a software "defeat device" that inflicted serious damage on the U.S. and worldwide environment. Volkswagen pled guilty to charges it conspired to defraud the United States and VW's U.S. customers and to violate the Clean Air Act by lying and misleading the Environmental Protection Agency ("EPA"), the California Air Resource Board ("CARB"), and U.S. customers

"about whether certain VW, Audi and Porsche branded diesel vehicles complied with U.S. emissions standards, using cheating software to circumvent the U.S. testing process and concealing material facts about its cheating from U.S. regulators."[11] Similar allegations have been levied against Daimler and are the subject of an ongoing U.S. Department of Justice investigation.

## C.    Agreements to Limit Competition in the Market for German Luxury Vehicles

68.    By no later than 1996, Defendants met to exchange commercially sensitive information and they have met "at least" 1,000 times since then.[12] According to public reports, industry group meetings that may have facilitated collusion involved 200 personnel and 60 working groups, and included engineering personnel and managers from each Defendant.[13]

69.    The scope of the information exchanged is broad. Volkswagen has admitted to the EC that "Daimler, BMW, Volkswagen, Audi and Porsche made agreements 'for

---

[11] Press Release, Department of Justice Office of Public Affairs, Volkswagen AG Agrees to Plead Guilty and Pay $4.3 Billion in Criminal and Civil Penalties (Jan. 11, 2017), *available at* https://www.justice.gov/opa/pr/volkswagen-ag-agrees-plead-guilty-and-pay-43-billion-criminal-and-civil-penalties-six (last visited August 11, 2017).

[12] *Das Auto-Syndikat.  See also* ABGASZENTRUM DER AUTOMOBILINDUSTRIE, http://www.abgaszentrum.de/firmenprofil.html ("The start-up and start date of the ADA is the year 1996.") (as translated by Google Chrome browser).

[13] *German Automakers May Have Colluded Over Diesel Emissions Treatment Systems – Spiegel*, REUTERS (July 21, 2017), http://www.reuters.com/article/germany-emissions-cartel-idUSL5N1KC39X (last visited August 11, 2017).

---

CLASS ACTION COMPLAINT

many years, at least since the 1990s, up to today' about the development of their vehicles, costs, suppliers and markets."[14] According to Reuters, Volkswagen has informed the EC that Defendants "discussed vehicle development, brakes, petrol and diesel engines, clutches and transmissions as well as exhaust treatment systems."[15]

70.    During the course of the conspiracy, Defendants exchanged confidential information concerning their development of diesel engines and the emissions control systems required to obtain certification for sale of the vehicles in the United States and in each state. Defendants marketed diesel engines as a "clean" alternative to gasoline-burning vehicles. This is in addition to conspiring about other technologies.

### D.    Defendants' Collusion Relating to Emission Control Systems

71.    The path that lead to the development of the illegal devices at issue in the *Volkswagen Litigation* may have begun with the conspiracy hatched by Defendants to agree upon the size of urea tanks and injection amounts. In other words, the *Volkswagen Litigation* was an outcome of Defendants' cartel.

72.    Urea tanks were a solution to the problem caused by pollutants created by diesel combustion. Using diesel in automobile engines produces nitrogen oxides in larger

---

[14] *Das Auto-Syndikat*.

[15] *German Automakers May Have Colluded Over Diesel Emissions Treatment Systems – Spiegel*, REUTERS (July 21, 2017), http://www.reuters.com/article/germany-emissions-cartel-idUSL5N1KC39X (last visited August 11, 2017).

CLASS ACTION COMPLAINT

amounts than gasoline or other fuels. $NO_X$ is a toxic pollutant that produces smog and a litany of environmental and health problems.

73.     Though more efficient, diesel engines create higher levels of $NO_X$ and soot, or particulate matter ("PM"), than emissions from gasoline engines due to the different ways the fuels combust and the varying methods of treating the resulting emissions following combustion. One way $NO_X$ emissions can be reduced is to adjust the compression and temperature, but that in turn produces PM, a similarly undesirable hydrocarbon-based emission. Another way $NO_X$ emissions can be reduced is through treating the exhaust. Regardless of the approach, addressing emission controls issues was a thorny, expensive problem for all Defendants that required intense collaboration with regulators and significant costs.

74.     In 2006, Wolfgang Bernhard, then a top executive at VW AG (formerly of Daimler), championed a technology-sharing agreement with Mercedes-Benz and BMW to jointly develop an alternative emission control system utilizing urea—a post-combustion emission reductant generically referred to as "Diesel Exhaust Fluid" or "DEF." This was marketed as "BlueTEC" by Mercedes-Benz and "AdBlue" by Volkswagen and other German vehicle manufacturers. When injected into the exhaust stream in a catalyst chamber, those treatments convert $NO_X$ into nitrogen gas, water, and carbon dioxide. This alternative system was expensive, costing $350 per vehicle, and

---

CLASS ACTION COMPLAINT

came with other compromises, including the need for installation of a sizeable DEF tank that would require regular refills.

75.    Starting in 2006, unhappy with the expense, Defendants reached a series of agreements concerning DEF. Defendants formed secret groups, which they called "Kungelrunden"; this can be loosely translated as groups in which "wheeling and dealing" take place. As the consensus formed that a 19-liter tank with moderate DEF consumption was necessary to satisfy U.S. emissions standards, the Kungelrunden engaged in heated discussions about tank size, DEF volumes, and service intervals.

76.    On April 5, 2006, Defendants met in Sindelfingen, Germany, and jointly decided to restrict the size of DEF tanks and agreed that the tanks would be produced by only two suppliers. By this time, development of the defeat devices at issue in the *Volkswagen Litigation* was underway at Volkswagen, Porsche, and Audi.

77.    VW, Audi, BMW, and Daimler attended a meeting on October 19, 2006 with Bosch. Following the meeting, a VW manager's notes state: "Everybody wants a limitation" of the DEF injection "because of the limited size of the urea tank. No one wants to report the real motivation of this limitation to the authorities (CARB, EPA)."

78.    In October 2007, Defendants met again, sharing confidential information about tank size and debating the costs and benefits of smaller tanks. The group was still considering using tanks with volumes "between 17 and 35 liters" at that time, but

---

CLASS ACTION COMPLAINT

Defendants were concerned about the costs.[16] Internal documents reflected a "need for coordination" among Defendants and "secret" meetings and discussions followed.[17]

79.    By 2008, it was obvious that smaller urea tanks would not be sufficient to meet new U.S. emissions standards that took effect in 2014. These new standards imposed costs and technological challenges at a time when each Defendant sought to expand into the U.S. diesel vehicle market. Defendants agreed that to comply with U.S. regulations, "a minimum tank volume of 19 liters" was needed at average DEF consumption levels; DEF tanks needed to hold enough urea so that the tanks only needed refilling every 16,000 kilometers.[18]

80.    However, upon information and belief, Defendants agreed to develop only an 8-liter tank for use in Europe and a 16-liter tank for the United States. Defendants were aware that these tanks might not comply with E.U. or U.S. standards. Tanks of this size would only treat emissions for a fraction of the life of the automobile. Defendants thus colluded to evade emissions requirements by limiting the tank size.

---

[16] *Das Auto-Syndikat*.

[17] *Id.*

[18] *Id.*; F. Dohmen, D. Hawranek, *Collusion Between German's Biggest Carmakers*, SPIEGEL ONLINE (August 27, 2017) (last visited August 11, 2017).

CLASS ACTION COMPLAINT

81.    Further, on June 15, 2009, Defendants' senior leaders met. Among the topics discussed was developing a coordinated strategy among them to develop a European infrastructure to service DEF tanks under the guidance of the VDA.

82.    The agreements reached by Defendants ensured that consumers—many of whom purchased Defendants' diesel vehicles because of promises of superior "clean diesel" technology—would not only be deprived of the benefit of the Diesel Premium, but would also unwittingly contribute to air pollution in their communities. This conspiracy intentionally targeted the United States and its strict emissions standards.

83.    Not one Defendant resolved its individual emissions compliance dilemma by introducing a larger urea tank. The reason, according to German media, is that it would have tipped off U.S. regulators: why would one company need a larger tank  for more urea when the others did not? Because it would have risked public disclosure of the fraud, each Defendant declined to install larger tanks.

84.    In May 2014, Audi warned other Defendants that unilateral efforts to increase the size of DEF tanks would result in an "arms race with regards to tank sizes, which is to be avoided as far as possible."[19] Of course, because Audi had addressed "compliance" with emissions controls in the U.S. via defeat devices, it was only logical that it would seek to enforce the collusive agreement restricting tank size.

---

[19] *Das Auto-Syndikat*.

CLASS ACTION COMPLAINT

85.    Bosch played an integral role in the development of defeat devices, necessitated by the cartel's agreement to limit tank urea size for Defendants. Upon information and belief, Bosch revealed in a meeting with German's Ministry of Transport that Bosch would offer "optimization tools" to clients, which included defeat device "options" with its EDC17, the engine control unit used in diesel vehicles. Bosch has publicly denied liability for calibrating the defeat devices, but it paid $327.5 million to settle claims against Bosch in the *Volkswagen Litigation*. Bosch is also under investigation for participating in the development of defeat devices for other car manufacturers, including Fiat. Bosch has profited handsomely from participating in a cottage industry based on deceiving U.S. regulators and consumers about the technology in German Luxury Vehicles, enabling both the German Premium and the Diesel Premium.

86.    Similarly, on information and belief, IAV also played a critical role in the development of defeat devices at Audi, Porsche, and VW.

**E.    Agreement to Limit Technology other than Emissions Control Systems**

87.    These agreements to forestall and limit technological innovation included more than just emissions controls systems in diesel vehicles. Defendants conspired with respect to virtually all areas of technological development. According to the written statement by Volkswagen to antitrust regulators, "there was an exchange of internal competitively sensitive technical data" establishing "technical standards" and agreeing to

---

CLASS ACTION COMPLAINT

install "only certain technical solutions" in new vehicles.[20] Defendants exchanged commercially sensitive data, for example, about the "driving resistance coefficient."[21]

88.    Defendants' agreement to restrict competition with respect to technological developments and innovation ensured that improvements in design and engineering occurred lock-step.

89.    Working group meetings through the VDA established rules regulating technical standards that specified that no one manufacturer could be far enough ahead of another in terms of innovations such that another would lose sales. According to *Der Spiegel*, "If a manufacturer introduced groundbreaking technology, the others had to be capable of also offering their customers the technology relatively quickly."[22] That is, rather than actually obtaining "advantage through technology," or "Vorsprung durch Technik," Defendants collectively created their own market dominance by not competing on technology.

---

[20] *Id.*

[21] *Id.*

[22]    F. Dohmen, D. Hawranek, *Collusion Between German's Biggest Carmakers*, SPIEGEL ONLINE (August 27, 2017), http://www.spiegel.de/international/germany/the-cartel-collusion-between-germany-s-biggest-carmakers-a-1159471.html (last visited August 27, 2017).

CLASS ACTION COMPLAINT

90.    One working group set the maximum speed at which convertible roofs could be opened and closed (50 kilometers per hour).[23]

91.    The "clutch" working group discussed when the parking lock should be activated. Minutes following a meeting specifically sought clarification as to whether there was a "working group standstill agreement."[24]

92.    Other working groups focused on brake controls and seat systems. The "foreign motor analysis" working group shared data so frequently its members joked about "give and take."[25] One way in which this sharing undermined competitive advantage was that rather than requiring Defendants to gather information by driving their competitors' vehicles, Defendants simply shared sensitive data.

93.    On September 24, 2013, the "air suspension" working group met to exchange information about supplier performance, presumably with the goal of determining who would continue supplying the cartel. In this particular meeting, Daimler and Porsche shared specific information about the performance of ZF Friedrichshafen, a company that had been supplying Defendants with parts for vehicle suspensions.

94.    These collusive activities were in stark contrast with the general market perception of competitiveness among Defendants, a perception which Defendants

---

[23] *Das Auto-Syndikat.*

[24] *Id.*

[25] *Id.*

actively marketed. Ordinarily, innovation is strongly correlated with competition and consumer choice. The market rewards innovators by supporting their products priced at a premium. Here, Defendants' secret agreements to let them appear as innovators permitted them to levy unlawful, unearned price premiums for their automobiles sold in the United States—the Diesel Premium and the German Premium.

95.     The type of information shared by Defendants enabled them to determine the prices at which German Luxury Vehicles were to be sold. Defendants shared competitively sensitive information concerning their costs, suppliers, as well as many aspects of automobile design and testing. On information and belief, this exchange of information allowed Defendants to maximize the premiums paid by Plaintiffs and members of the Classes.

**F.     Defendants Targeted Marketing and Sales to U.S. Consumers**

96.     The revelation of this cartel shatters the long-held myth of German engineering, which each Defendant carefully cultivated in its marketing intentionally targeting U.S. consumers. To U.S. consumers, German automobiles, as a brand, command a premium price due to promises of superior innovation and engineering.

97.     For example, VW's long used tagline, "That's the power of German engineering," conveyed that customers would receive cutting edge technology, for which

consumers paid a premium.[26] "Volkswagen has long touted 'German engineering' as the key difference between its cars and their competitors."[27] In a 2014 Super Bowl advertisement from Volkswagen, German engineers sprouted wings each time a Volkswagen automobile reached 100,000 miles.[28] Volkswagen's Vice President of Marketing, Vinay Shahani, noted of the ad, "We are thrilled with this year's creative [*sic*], which highlights the enthusiasm around our brand and our vehicles' German engineering in a humorous spot that embodies the Volkswagen spirit."[29]

98.    Likewise, claims of superior design and technology have been at the heart of BMW's marketing in the United States for decades. BMW advertises its automobiles in

---

[26] Alextube145, *That's the Power of German Engineering*, YOUTUBE (Sept. 5, 2012), https://www.youtube.com/watch?v=Aw8K233BdL0 (last visited August 11, 2017); "That's the Power of German Engineering" Volkswagen Advertisement, *available at* https://mir-s3-cdn-cf.behance.net/project_modules/max_1200/d34c6522226435.56045b677fcbf.jpg (last visited August 11, 2017).

[27] Don Sherman, *What, Exactly, Does Volkswagen Mean by "German Engineering," Anyway?*, CAR AND DRIVER (Jan. 3, 2017), http://blog.caranddriver.com/what-exactly-does-volkswagen-mean-by-german-engineering-anyway/ (last visited August 11, 2017).

[28] Blue Cobs, *VW Super Bowl Commercial Get Wings Super Bowl Ad 2014*, YOUTUBE (Feb. 2, 2014), https://www.youtube.com/watch?v=sylr-XHKcPg (last visited July 27, 2017).

[29] David Gianatasio, *Ad of the Day: Volkswagen Gets Its Wings in 2014 Super Bowl Ad*, ADWEEK (Jan. 28, 2014), http://www.adweek.com/brand-marketing/ad-day-volkswagen-gets-its-wings-2014-super-bowl-commercial-155270/ (last visited August 11, 2014).

---

CLASS ACTION COMPLAINT

the United States as "the ultimate driving machine," powered by "performance, design, innovation and efficiency."[30] The auto company boasts of its "pure BMW performance" and "innovative eDrive technology" and claims that "[a]t the heart of every BMW is advanced engineering that ensures maximum power and performance."[31] "Always innovative, BMW has pioneered technology that creates exhilarating and efficient driving experiences," BMW claims.[32] BMW publicized its 45 years of Bavarian engineering excellence in part by producing a six-part video on the history of the 5-Series.[33]

---

[30]    *Vehicles*, BMW: THE ULTIMATE DRIVING MACHINE, https://www.bmwusa.com/vehicles/bmwi.html (last visited August 11, 2017).

[31] *What Makes a BMW a BMW?*, BMW: THE ULTIMATE DRIVING MACHINE, [http://www.bmwusa.com/InsideBMW.aspx (last visited August 11, 2017).

[32] *What Makes a BMW a BMW?*, BMW: THE ULTIMATE DRIVING MACHINE, http://www.bmwusa.com/InsideBMW.aspx (last visited August 11, 2017).

[33] *Today's BMW 535i Reflects 45 Years of Bavarian Automotive Engineering Excellence*, SOUTH BAY BMW (Mar. 15, 2017), http://www.southbaybmw.com/blog/2017/march/15/todays-bmw-535i-reflects-45-years-of-bavarian-automotive-engineering-excellence.htm?locale=en_US (last visited August 11, 2017); BMW, *The BMW 5 Series History*, YOUTUBE (Dec. 28, 2016), https://www.youtube.com/watch?v=UFJwxJpoemU#action=share (last visited August 11, 2017).

---

CLASS ACTION COMPLAINT

"With 333 horses, the power is Herculean. The handling, telepathic. And the brakes, breathtaking. Add a roof that disappears as swiftly as its taillights, and you have pure, unremitting love."

99.    BMW has promoted its cars, including the cars of its subsidiary, MINI USA, in American entertainment. As one example, the MINI Cooper S starred in the adrenaline-pumping driving sequences of the video game The Bourne Conspiracy, released by video game company Vivendi Games in the United States in June 2008. Kate Alini, MINI Marketing Communications Manager, announced at the time, "The role of the MINI Cooper S in The Bourne Conspiracy game is a great fit for the MINI brand. As the featured vehicle and Bourne's getaway car, this integration allows us to demonstrate the agility and performance that's inherent in the full line of MINI vehicles."[34]

---

[34] Joel Arellano, *Mini Cooper S Is a Getaway in the Bourne Conspiracy Game*, AUTOMOTIVE.COM (June 26, 2008), www.automotive.com/news/mini-cooper-s-is-a-getaway-in-the-bourne-conspiracy-game-5281/ (last visited August 11, 2017).

CLASS ACTION COMPLAINT

100.    Targeting U.S. consumers, Mercedes-Benz similarly publicizes its engineering innovation. In 2011, Mercedes-Benz launched a brand campaign celebrating "125 Years of Innovation."[35] The Mercedes-Benz USA website touts Daimler's history as an innovator to U.S. consumers: "Leading through innovation. Even more than its meticulous engineering, Mercedes-Benz is defined by its continuous innovation. Since inventing the car in 1886, we've simply never stopped reinventing it."[36]

---

[35]  Inchcape Mercedes-Benz, *Mercedes-Benz Celebrates 125 Years of Innovation*, YOUTUBE (Apr. 5, 2011), https://www.youtube.com/watch?v=PTxclPfn-uc (last visited August 11, 2017).

[36]      *Leading Through Innovation*, MERCEDES-BENZ, https://www.mbusa.com/mercedes/benz/innovation (last visited August 11, 2017).

---

CLASS ACTION COMPLAINT



101.   In glaring contrast to its anti-competitive activities, Audi's company motto is "Vorsprung durch Technik," or "advantage [over other companies] through technology." Audi has also used the tagline "Truth in Engineering" in its print and television advertising.[37]

### G. Each Defendant Met with U.S. Regulators to Obtain Permission to Sell Vehicles in the United States

102.   The State of California has passed and enforced laws designed to protect its citizens from air pollution. California emissions standards are more stringent than those imposed by European and U.S. regulators. Automobile manufacturers selling vehicles in

---

[37] Audi USA, *"It Couldn't Be Done" – New Audi Commercial*, YOUTUBE (May 13, 2013), https://www.youtube.com/watch?v=xZjykPITuq0 (last visited August 11, 2017).

California and in states adopting California standards must abide by these laws, which are enforced by CARB. CARB was targeted by Defendants' conspiracy with respect to the "clean diesel" agreements.

103.   Defendants also specifically wooed U.S. regulators to obtain approval of vehicles built specifically for sale to U.S. consumers. Thus, it was crucial that Defendants succeeded in deceiving EPA and CARB with respect to emissions of diesel vehicles.

104.   To encourage EPA and CARB regulators to permit the sale of their diesel automobiles in the United States, all Defendants engaged in marketing campaigns that included shipping vehicles from Germany to the United States so that regulators could drive them. For example, German manufacturers, including Daimler and VW, participated in a "Clean Diesel Media Ride-and-Drive" hosted by Bosch on January 31, 2006, followed by a February 2, 2006 "Clean Diesel Symposium" in Sacramento, California. The Clean Diesel events targeted journalists, environmentalists, policymakers, and regulators to promote "the benefits of modern clean diesel technology and understand the role of clean diesel vehicles for California's consumers."[38]

105.   On October 17, 2007 Audi and the VDA hosted a Symposium in San Francisco "to promote how activities of the German automotive industry advance the

---

[38]   *Bosch    Drives    Clean    Diesel    in    California*, BOSCH, http://www.bosch.us/content/language1/html/734_4066.htm?section=28799C0E86C1477 99E02226E94 (last visited August 11, 2017).

development of technologies, reducing $CO_2$ emissions." Presentations focused on German developments in $CO_2$ reduction technologies including powertrain solutions, transmission technologies, direct injection systems, and start/stop systems.[39]

106.   On October 3, 2008, the German Embassy in Washington D.C. hosted its second annual "Future Motion Made in Germany" symposium to highlight German automotive technologies including "clean diesel" technology. Sponsors of the event included BMW, Daimler, Audi, Porsche, and Volkswagen.[40]

107.   In April 2009, Bosch hosted a "Diesel Day" event in Sacramento, California, attended by representatives from Audi, BMW, and Volkswagen.[41] Bosch invited CARB to the event as well, to showcase Defendants' "clean diesel" vehicles.

108.   In December 2012, German automakers launched a "joint promotion campaign" to promote clean diesel vehicles in the U.S. Under the auspices of the VDA

---

[39] Press Release, Bosch, Bosch Reinforces Carbon Dioxide Reduction Technologies in California (Oct. 18, 2007), *available at* http://us.bosch-press.com/tbwebdb/bosch-usa/modules/boschinfokorb.dll/presstext.pdf?db=tbwebdb_us&langid=1&txtids=321&dpi=72&downloa d=presstext.pdf (last visited August 11, 2017).

[40] Press Release, Bosch, Bosch: Clean Diesel Is Key Part of Future Technology Mix (Oct. 6, 2008), *available at* http://us.bosch-press.com/tbwebdb/bosch-usa/modules/boschinfokorb.dll/presstext.pdf?db=tbwebdb_us&langid=1&txtids=364&dpi=72&downloa d=presstext.pdf (last visited August 11, 2017).

[41] *Propel Fuels Showcases Next Generation Green Diesel at California Diesel Days*, BUSINESSWIRE (Apr. 1, 2009), http://www.businesswire.com/news/home/20090401006406/en/Propel-Fuels-Showcases-Generation-Green-Diesel-California (last visited August 11, 2017).

CLASS ACTION COMPLAINT

and its member companies, Audi, BMW, Bosch, Daimler, Porsche, and Volkswagen, the campaign adopted the slogan "Clean Diesel. Clearly Better."[42]

109.   The German American Chamber of Commerce hosted an Automotive Forum with Audi, BMW, Daimler, Porsche, and Volkswagen on March 28, 2013 in New York City titled "Clean Diesel on the Rise." All the participating firms contributed "automotive experts" to a panel discussion and the forum included a presentation by the VDA.[43]

110.   Defendants' U.S. subsidiaries played an important role in implementing the cartel's scheme. Defendants' U.S. subsidiaries sold and marketed the German Luxury Vehicles that are at issue and negotiated with U.S. and California regulators regarding compliance with emissions requirements and other U.S. law. Defendants' U.S. subsidiaries acted as agents of their German parents in connection with the sale and marketing of German Luxury Vehicles.

## H.   Defendants' History of Collusion and Wrongdoing

111.   Defendants have a history of collusion. In 2016, the E.C. fined Daimler and other European car makers $3.2 billion for participating in a scheme to fix prices for

---

[42] *"Clean Diesel. Clearly Better." Campaign for Clean Diesel Cars Welcomed*, CISION PR NEWSWIRE (Dec. 12, 2012), http://www.prnewswire.com/news-releases/clean-diesel-clearly-better-campaign-for-clean-diesel-cars-welcomed-183261432.html (last visited August 11, 2017).

[43] *BACC Automotive Forum with Audi, BMW, Daimler, Porsche & VW*, GERMAN AMERICAN CHAMBERS OF COMMERCE, http://www.gaccny.com/en/events/our-events/gacc-event/events/gacc-automotive-forum-with-audi-bmw-daimler-porsche-vw/ (last visited August 11, 2017).

---

CLASS ACTION COMPLAINT

trucks. MAN, a subsidiary of Volkswagen, participated in the scheme but did not pay a fine because it was the first to disclose the existence of the scheme to regulators.[44]

112.  In June 2016, Germany's Federal Cartel Office investigated Bosch, BMW, Volkswagen, and Daimler concerning allegations of collusion in steel purchases for automobile manufacturers.[45]

113.  As part of the *Volkswagen Litigation*, Volkswagen has paid an unprecedented $20 billion to U.S. regulators and private parties in penalties, civil restitution, and settlement payments in connection with its scheme to use a "defeat device" to cheat emissions tests.[46]

---

[44] James Kanter, *Price-Fixing Truck Makers Get Record E.U. Fine: $3.2 Billion*, N.Y. TIMES, July 19, 2016, at B2, *available at* https://www.nytimes.com/2016/07/20/business/international/eu-trucks-europe-volkswagen.html?mcubz=0 (last visited August 11, 2017).

[45] Stefan Ogbac, *Various German Automakers, Suppliers Raided Over Steel-Purchasing Cartel Probe*, AUTOMOBILE (July 6, 2016), http://www.automobilemag.com/news/various-german-automakers-suppliers-raided-steel-purchasing-cartel-probe/ (last visited August 11, 2017).

[46] Press Release, Department of Justice Office of Public Affairs, Volkswagen AG Agrees to Plead Guilty and Pay $4.3 Billion in Criminal and Civil Penalties (Jan. 11, 2017), *available at* https://www.justice.gov/opa/pr/volkswagen-ag-agrees-plead-guilty-and-pay-43-billion-criminal-and-civil-penalties-six (last visited August 11, 2017); *U.S. Judge Approves $14.7 Billion Settlement in VW Diesel Scandal*, FORTUNE (Oct. 25, 2016), http://fortune.com/2016/10/26/settlement-vw-diesel-scandal/ (last visited August 11, 2017).

---

CLASS ACTION COMPLAINT

114.   Indictments arising from Volkswagen's defeat device may also have yielded information relating to this cartel. On June 1, 2016, a manager at Volkswagen of America's Test Center California, James Liang, was indicted for conspiracy to defraud the United States, conspiracy to commit wire fraud, conspiracy to violate the Clean Air Act, and violation of the Clean Air Act. James Liang had been an engineer in Volkswagen AG's diesel development department from 1983 until May 2008, when he moved to the United States to assist in the launch of VW's new TDI line of diesel vehicles. As Leader of Diesel Competence in VW's Test Center in California, Liang assisted in certification, testing and warranty issues for VW diesel vehicles in the United States.[47] Liang pled guilty to his role in the nearly ten-year conspiracy to defraud U.S. regulators and U.S. Volkswagen consumers on September 9, 2016. Under Liang's plea agreement, he agreed to "cooperate with the government in its ongoing investigation."[48]

115.   On January 7, 2017, Oliver Schmidt, formerly General Manager of the Engineering and Environmental Affairs Office for Volkswagen of America, was arrested

---

[47] *United States v. Liang*, No. 2:16-cr-20394-SFC-APP, Indictment (E.D. Mich. June 1, 2016), *available at* https://www.justice.gov/opa/file/890761/download (last visited August 11, 2017).

[48] *Id.*

---

CLASS ACTION COMPLAINT

in Miami, Florida.[49] Schmidt was criminally charged with participation in a conspiracy to defraud the United States through a campaign of deception aimed at U.S. regulators regarding the existence of a defeat device in VW clean diesel vehicles.[50]

116.   Further, Schmidt was named as one of six VW executives and employees in an indictment returned by a federal grand jury in the Eastern District of Michigan charging Schmidt with eleven felony counts including conspiracy to defraud the United States, conspiracy to defraud VW's U.S. consumers, conspiracy to violate the Clean Air Act, wire fraud, and violations of the Clean Air Act.[51] On July 25, 2017, lawyers for Schmidt informed a judge for the Eastern District of Michigan that Schmidt had decided to enter a guilty plea at a hearing scheduled for August 4, 2017.[52]

---

[49] Megan Geuss, *VW Exec Arrested During Miami Vacation Over Emissions Scandal*, ARS TECHNICA (Jan. 10, 2017), https://arstechnica.com/cars/2017/01/vw-exec-arrested-during-miami-vacation-over-emissions-scandal/ (last visited August 11, 2017).

[50] Adam Goldman, Hiroko Tabuchi, and Jack Ewing, *F.B.I. Arrests Volkswagen Executive on Conspiracy Charge in Emissions Scandal*, N.Y. TIMES, Jan. 9, 2017, at A13, *available at* https://www.nytimes.com/2017/01/09/business/volkswagen-diesel-emissions-investigation-settlement.html (last visited August 11, 2017).

[51] Press Release, Department of Justice Office of Public Affairs, Volkswagen AG Agrees to Plead Guilty and Pay $4.3 Billion in Criminal and Civil Penalties; Six Volkswagen Executives and Employees are Indicted in Connection with Conspiracy to Cheat U.S. Emissions Tests (Jan. 11, 2017), *available at* https://www.justice.gov/opa/pr/volkswagen-ag-agrees-plead-guilty-and-pay-43-billion-criminal-and-civil-penalties-six (last visited August 11, 2017).

[52] Neal E. Boudette, *Volkswagen Executive to Plead Guilty in Diesel Emissions Case*, N.Y. TIMES, July 26, 2017, at B6, *available at*

---

CLASS ACTION COMPLAINT

117.    Similarly, Giovanni Pamio, a manager in Audi's U.S. V6 Diesel Development Certification and OBD group (Thermodynamics), was indicted on July 6, 2017 and is rumored to be cooperating with U.S. authorities.[53]

118.    In addition, raids by authorities in the E.U, potentially relate to the unfolding revelation of this cartel. During the week of January 23, 2017, German prosecutors in Braunschweig and Munich raided 28 offices and residences in Germany in connection with their investigations into the diesel emissions scandal. Included in the raids was the office and villa of former Volkswagen AG Chairman Martin Winterkorn.[54] Bosch's offices were also rumored to have been raided; so too were IAV's offices.

119.    On March 15, 2017, the same day as Audi's annual press conference, Munich prosecutors launched raids aimed at Audi offices, including searches conducted

---

https://www.nytimes.com/2017/07/25/business/volkswagen-diesel-scandal-oliver-schmidt-guilty.html (last visited August 11, 2017).

[53] Press Release, Department of Justice Office of Public Affairs, Former Audi Manager Charged in Connection With Conspiracy to Cheat U.S. Emissions Tests (July 6, 2017), *available at* https://www.justice.gov/opa/pr/former-audi-manager-charged-connection-conspiracy-cheat-us-emissions-tests (last visited August 11, 2017).

[54] *Ermittlungen gegen Winterkorn wegen Betrugsverdachts*, SPIEGEL ONLINE (Jan. 27, 2017), http://www.spiegel.de/wirtschaft/unternehmen/martin-winterkorn-staatsanwaltschaft-ermittelt-wegen-betrugsverdacht-a-1132013.html (last visited August 11, 2017).

---

CLASS ACTION COMPLAINT

at Audi headquarters in Ingolstadt, an Audi factory in Neckarsulm, several private residences, and offices in the states of Baden-Württemberg and Lower Saxony.[55]

120.  Included in the raids were the German offices of Jones Day, the American law firm which had been hired in late 2015 by the VW AG Board to lead an internal inquiry into the emissions cheating and submit a comprehensive report.[56] The Jones Day report was never produced in civil litigation in the *Volkswagen Litigation* and the collusion alleged herein remained undisclosed until recently.

121.  Reports indicate that prosecutors also targeted 47 Volkswagen Group employees, including VW AG Chief Executive Matthias Mueller and Audi CEO Rupert Stadler, as well as departments including sales, marketing, personnel, engine development and legal compliance along with executive offices. Prosecutors seized

---

[55] Hans Leyendecker, Georg Mascolo, Klaus Ott and Nicolas Richter, *German Police Raids Audi Headquarters Over Emissions Fraud,* SZ INTERNATIONAL (Mar. 15, 2017), http://international.sueddeutsche.de/post/158428520320/germanpoliceraidsaudiheadquartersover (last visited August 11, 2017).

[56] Jack Ewing and Bill Vlasic, *German Authorities Raid U.S. Law Firm Leading Volkswagen's Emissions Inquiry*, N.Y. TIMES, Mar. 17, 2017, at B1, *available at* https://www.nytimes.com/2017/03/16/business/volkswagen-diesel-emissions-investigation-germany.html (last visited August 11, 2017).

---

CLASS ACTION COMPLAINT

documents, emails, personal calendars, notebooks, mobile phones and electronic passwords from current and past Volkswagen and Audi employees.[57]

122.    On May 23, 2017, authorities conducted additional searches of eleven Daimler locations in Germany, including Daimler's headquarters in Stuttgart, in connection with the Stuttgart prosecutor's investigation of fraud and false advertising in relation to the manipulation of exhaust gas treatment in diesel passenger cars.[58]

123.    While *Der Spiegel* reported that Volkswagen made a voluntary declaration to the German and E.U. Competition offices on July 4, 2016, German and U.S. media have reported that Daimler declared itself to the authorities "significantly earlier" and may have begun cooperating with competition authorities as early as 2014.[59] Daimler

---

[57] Jack Ewing, *Offices of Volkswagen and Audi Chiefs Searched in Raid, Warrant Says*, N.Y. TIMES, Mar. 19, 2017, at B2, *available at* https://www.nytimes.com/2017/03/19/business/volkswagen-chief-executive-emissions-warrant.html (last visited August 11, 2017).

[58] Gilbert Kreijger and Markus Fasse, *Raids at Mercedes Sites*, HANDELSBLATT GLOBAL (May 23, 2017), https://global.handelsblatt.com/companies-markets/raids-at-mercedes-sites-770689 (last visited August 11, 2017).

[59] Bertel Schmitt, *German Car Cartel Triggers Rat-Out-Race Between Daimler, Volkswagen and BMW*, FORBES (July 25, 2017), https://www.forbes.com/sites/bertelschmitt/2017/07/25/german-car-cartel-triggers-rat-out-race-between-daimler-volkswagen-and-bmw/#31ed7a1c5c1a (last visited August 11, 2017); *see also BMW Halts Project Talks After Daimler Blew Whistle – Sueddeutsche*, REUTERS (July 25, 2017), http://uk.reuters.com/article/uk-germany-emissions-daimler-bmw-idUKKBN1AA2GK (last visited August 11, 2017).

---

CLASS ACTION COMPLAINT

may avoid a multi-million dollar fine by cooperating first. Volkswagen may also receive leniency.

124.   Further, on June 23, 2016, ten days before Volkswagen's voluntary declaration, dawn raids were conducted by the German Federal Cartel Office (Bundeskartellamt) at the offices of BMW, Daimler, Volkswagen, Bosch, and ZF Friedrichshafen as part of an investigation into suspected breaches of German's competition law. Reports indicate that the investigation stemmed from suspicions raised in an earlier probe into alleged anti-competitive behavior by three steel manufacturers.[60] It has not yet been revealed if the steel investigation is connected.

## V.   THE STATUTE OF LIMITATIONS DOES NOT BAR PLAINTIFFS' CLAIMS

### A.   The Statute of Limitations Did Not Begin to Run Since Plaintiffs Did Not and Could Not Have Discovered Their Claims with Reasonable Diligence Until July 21, 2017.

125.   Plaintiffs and members of the Classes had no knowledge, actual or constructive, of the facts supporting their claims for relief including the secret meetings Defendants attended to exchange competitively sensitive information.

126.   Plaintiffs and members of the Classes did not, and could not have discovered through the exercise of reasonable diligence, the existence of the conspiracy until July 21,

---

[60]   Steve Garnsey, *German Authorities Raid Carmakers and Tier Suppliers*, AUTOMOTIVE LOGISTICS (July 8, 2016), https://automotivelogistics.media/news/german-authorities-raid-carmakers-tier-suppliers (last visited August 11, 2017).

---

CLASS ACTION COMPLAINT

2017, when *Der Spiegel* published an article detailing the conspiracy and reported that Volkswagen had revealed its and others' participation in this conspiracy to coordinate with the other Defendants regarding, *inter alia*, costs, suppliers, technology, and emission controls.[61]

127.   Defendants' anticompetitive conspiracy, by its very nature, was self-concealing.   Plaintiffs and members of the Classes reasonably considered it to be a competitive industry.   Accordingly, a reasonable person under the circumstances would not have been alerted to investigate the legitimacy of Defendants' German Luxury Vehicle cartel before July 21, 2017.

128.   Plaintiffs and members of the Classes exercised reasonable diligence. Plaintiffs and members of the Classes could not have discovered the alleged conspiracy before July 21, 2017 by the exercise of reasonable diligence because of the deceptive practices and techniques of secrecy employed by Defendants and all of their co-conspirators to conceal their combination.

129.   Because Plaintiffs and members of the Classes could not have discovered the cartel with reasonable diligence, the statute of limitations did not begin to run and has been tolled, until July 21, 2017.

---

[61] *Das Auto-Syndikat.*

CLASS ACTION COMPLAINT

**B.    Defendants' Fraudulent Concealment Tolled the Statute of Limitations.**

130.    Throughout the Class Period, the contract, combination, or conspiracy alleged herein was fraudulently concealed by Defendants by various means and methods, including, but not limited to secret meetings, surreptitious communications between Defendants by the use of the telephone or in-person meetings at trade association meetings (and elsewhere). For example, throughout the course of the conspiracy, Defendants secretly met at least 1,000 times to communicate, and ultimately coordinate, about various facets of the German Luxury Vehicles industry, including technology, costs, supplies, markets, and emissions equipment. Defendants' surreptitious meetings successfully concealed the decades-long conspiracy as reflected by the fact that it did not become public until July 21, 2017.

131.    Defendants called their secret meetings "Kungelrunden," which is a German term that roughly translates to English as "wheeling and dealing." In internal communications, Defendants acknowledged that the meetings and events were "secret" and fretted that one of their fellow members would disclose their activities to German and European regulators. As of 2017, both Daimler and Volkswagen have disclosed confidentially to German antitrust authorities Defendants' ongoing, secret wrongdoing. These belated disclosures to regulators show that Defendants knew all along that sharing competitively sensitive information was improper and hid their conspiracy from regulators, Plaintiffs, and members of the Classes.

---

CLASS ACTION COMPLAINT

132.   The exclusive and secretive nature of Defendants' meetings is further underscored by the fact that Defendants excluded other automotive manufacturers from their meetings.

133.   During the Class Period, Defendants affirmatively made numerous misleading public statements falsely portraying the market for German Luxury Vehicles as a competitive one. For example, in Volkswagen's 2016 Annual Report, Volkswagen falsely described competition between it and other German Luxury Vehicle manufacturers as "fierce."

134.   Further, throughout the Class Period, Defendants misleadingly and falsely touted their commitment to compliance with the antitrust laws or competition laws. For example, in Daimler's 2016 Annual Report, Daimler stated:

> Our Group-wide antitrust compliance program is oriented to national and international standards. The program establishes a binding, globally valid Daimler standard that defines how matters of competition law are to be assessed. The Daimler standard is based on the strict standards of the European antitrust authorities and courts. Its existence ensures a uniform level of compliance and advice in all countries.

135.   Examples of Defendants' efforts to conceal the conspiracy include their making of false representations to investors and the public that Defendants competed aggressively. Daimler's top executive, Dieter Zetsche, falsely boasted that Defendants vigorously compete, stating "almost every day, we are treading on each others' toes as

neighbors. In that respect, competition is something incredibly good."[62] Harald Krüger, CEO of BMW, said, "Time and time again, this competition spurs us on to reach top performances." Volkswagen CEO Matthias Müller praised the rivalry of the brands. And Audi CEO Rupert Stadler said that competition had "brought us all a technological advantage."[63]

136.    To further portray intense competition, Defendants' representatives loudly criticized their so-called competitors. One Mercedes-Benz manager said critically of a Volkswagen, "You are better off buying a Škoda; it is 3,000 Euros cheaper and better."[64] A BMW developer stated publicly that a new Audi "already looks as old as its predecessor."[65] During at least one trade show, a Volkswagen board member said that a Daimler model "has gap dimensions like a truck."

137.    These "critiques" were, at best, misleading, and were intended to bolster the false impression that Defendants vigorously competed against one another on technological and design innovations, quality and price. It was both part of the continued concealment and a continued rationale for leveraging the German Premium and the Diesel Premium for German Luxury Vehicles.

---

[62] *Id.*

[63] *Id.*

[64] *Id.*

[65] *Id.*

138.    By virtue of the fraudulent concealment of their wrongful conduct by Defendants and all of their co-conspirators, the running of any statute of limitations has been tolled and suspended with respect to any claims and rights of action that Plaintiffs and members of the Classes have as a result of the unlawful contract, combination, or conspiracy alleged in this Complaint.

## VI.    CLASS ACTION ALLEGATIONS

139.    All consumers who purchased or leased German Luxury Vehicles in the U.S. paid a German Premium for alleged German engineering and innovative technology. U.S. consumers who purchased or leased German Luxury Vehicles with diesel engines paid an additional Diesel Premium. Based on expert analysis, identifying variations in the German Premium and Diesel Premium as between each Manufacturer Defendant is ascertainable and identifiable. Similarly, distinctions between purchasers of new and used automobiles are ascertainable and identifiable.

### A.    Nationwide Injunctive Relief Class

140.    Plaintiffs bring this action on behalf of themselves and as a class action under Rule 23(a) and (b)(2) of the Federal Rules of Civil Procedure, seeking equitable and injunctive relief on behalf of the following class (the "Nationwide Injunctive Relief Class"):

All persons and entities who, during the Class Period, purchased or leased a new or used German Luxury Vehicle in the United States not for resale, which was manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of Defendants.

**B. Damages Class**

141.   Plaintiffs also bring this action on behalf of themselves and as a class action under Rule 23(a) and (b)(3) of the Federal Rules of Civil Procedure seeking damages pursuant to state antitrust, unfair competition, and consumer protection laws as well as common law unjust enrichment on behalf of persons and entities as members of the following state classes (collectively, the "Damages Class"):

a.   **Arizona Class:** All persons and entities who, during the Class Period, indirectly purchased or leased a new or used German Luxury Vehicle in Arizona for personal use and not for resale, which was manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of Defendants.

b.   **Arkansas Class:** All persons and entities who, during the Class Period, indirectly purchased or leased a new or used German Luxury Vehicle in Arkansas for personal use and not for resale, which was manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of Defendants.

c.   **California Class:** All persons and entities who, during the Class Period, indirectly purchased or leased a new or used German Luxury Vehicle in California for personal use and not for resale, which was manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of Defendants.

d.   **District of Columbia Class:** All persons and entities who, during the Class Period, indirectly purchased or leased a new or used German Luxury Vehicle in District of Columbia for personal use and not for resale, which was manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of Defendants.

---

CLASS ACTION COMPLAINT

e. **Florida Class:** All persons and entities who, during the Class Period, indirectly purchased or leased a new or used German Luxury Vehicle in Florida for personal use and not for resale, which was manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of Defendants.

f. **Hawaii Class:** All persons and entities who, during the Class Period, indirectly purchased or leased a new or used German Luxury Vehicle in Hawaii for personal use and not for resale, which was manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of Defendants.

g. **Illinois Class:** All persons and entities who, during the Class Period, indirectly purchased or leased a new or used German Luxury Vehicle in Illinois for personal use and not for resale, which was manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of Defendants.

h. **Iowa Class:** All persons and entities who, during the Class Period, indirectly purchased or leased a new or used German Luxury Vehicle in Iowa for personal use and not for resale, which was manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of Defendants.

i. **Kansas Class:** All persons and entities who, during the Class Period, indirectly purchased or leased a new or used German Luxury Vehicle in Kansas for personal use and not for resale, which was manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of Defendants.

j. **Maine Class:** All persons and entities who, during the Class Period, indirectly purchased or leased a new or used German Luxury Vehicle in Maine for personal use and not for resale, which was manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of Defendants.

k. **Massachusetts Class:** All persons and entities who, during the Class Period, indirectly purchased or leased a new or used German Luxury Vehicle in Massachusetts for personal use and not for resale, which was manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of Defendants.

---

CLASS ACTION COMPLAINT

l.  **Michigan Class:** All persons and entities who, during the Class Period, indirectly purchased or leased a new or used German Luxury Vehicle in Michigan for personal use and not for resale, which was manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of Defendants.

m.  **Minnesota Class:** All persons and entities who, during the Class Period, indirectly purchased or leased a new or used German Luxury Vehicle in Minnesota for personal use and not for resale, which was manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of Defendants.

n.  **Mississippi Class:** All persons and entities who, during the Class Period, indirectly purchased or leased a new or used German Luxury Vehicle in Mississippi for personal use and not for resale, which was manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of Defendants.

o.  **Missouri Class:** All persons and entities who, during the Class Period, indirectly purchased or leased a new or used German Luxury Vehicle in Missouri for personal use and not for resale, which was manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of Defendants.

p.  **Montana Class:** All persons and entities who, during the Class Period, indirectly purchased or leased a new or used German Luxury Vehicle in Montana for personal use and not for resale, which was manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of Defendants.

q.  **Nebraska Class:** All persons and entities who, during the Class Period, indirectly purchased or leased a new or used German Luxury Vehicle in Nebraska for personal use and not for resale, which was manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of Defendants.

r.  **Nevada Class:** All persons and entities who, during the Class Period, indirectly purchased or leased a new or used German Luxury Vehicle in Nevada for personal use and not for resale, which was manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of Defendants.

---

CLASS ACTION COMPLAINT

s. **New Hampshire Class:** All persons and entities who, during the Class Period, indirectly purchased or leased a new or used German Luxury Vehicle in New Hampshire for personal use and not for resale, which was manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of Defendants.

t. **New Mexico Class:** All persons and entities who, during the Class Period, indirectly purchased or leased a new or used German Luxury Vehicle in New Mexico for personal use and not for resale, which was manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of Defendants.

u. **New York Class:** All persons and entities who, during the Class Period, indirectly purchased or leased a new or used German Luxury Vehicle in New York for personal use and not for resale, which was manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of Defendants.

v. **North Carolina Class:** All persons and entities who, during the Class Period, indirectly purchased or leased a new or used German Luxury Vehicle in North Carolina for personal use and not for resale, which was manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of Defendants.

w. **North Dakota Class:** All persons and entities who, during the Class Period, indirectly purchased or leased a new or used German Luxury Vehicle in North Dakota for personal use and not for resale, which was manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of Defendants.

x. **Oregon Class:** All persons and entities who, during the Class Period, indirectly purchased or leased a new or used German Luxury Vehicle in Oregon for personal use and not for resale, which was manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of Defendants.

y. **Rhode Island Class:** All persons and entities who, during the Class Period, indirectly purchased or leased a new or used German Luxury Vehicle in Rhode Island for personal use and not for resale, which was manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of Defendants.

---

CLASS ACTION COMPLAINT

z. **South Dakota Class:** All persons and entities who, during the Class Period, indirectly purchased or leased a new or used German Luxury Vehicle in South Dakota for personal use and not for resale, which was manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of Defendants.

aa. **Tennessee Class:** All persons and entities who, during the Class Period, indirectly purchased or leased a new or used German Luxury Vehicle in Tennessee for personal use and not for resale, which was manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of Defendants.

bb. **Utah Class:** All persons and entities who, during the Class Period, indirectly purchased or leased a new or used German Luxury Vehicle in Utah for personal use and not for resale, which was manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of Defendants.

cc. **Vermont Class:** All persons and entities who, during the Class Period, indirectly purchased or leased a new or used German Luxury Vehicle in Vermont for personal use and not for resale, which was manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of Defendants.

dd. **West Virginia Class:** All persons and entities who, during the Class Period, indirectly purchased or leased a new or used German Luxury Vehicle in West Virginia for personal use and not for resale, which was manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of Defendants.

ee. **Wisconsin Class:** All persons and entities who, during the Class Period, indirectly purchased or leased a new or used German Luxury Vehicle in Wisconsin for personal use and not for resale, which was manufactured or sold by a Defendant, any current or former subsidiary of a Defendant, or any co-conspirator of Defendants.

142. The Nationwide Injunctive Relief Class and the Damages Class are referred to herein collectively as the "Classes." Excluded from the Classes are Defendants, their parent companies, subsidiaries and affiliates, any co-conspirators, the federal government and instrumentalities of the federal government, states and their subdivisions, agencies

and instrumentalities, and persons who purchased German Luxury Vehicles directly or for resale.

143. While Plaintiffs do not know the exact number of the members of the Classes, Plaintiffs believe there are (at least) thousands of members in each of the states of the Damages Class and in the Nationwide Injunctive Relief Class.

## C. Common Questions of Law and Fact Predominate

144. Common questions of law and fact exist as to all members of the Classes. This is particularly true given the nature of Defendants' conspiracy, which was generally applicable to all the members of the Classes, thereby making appropriate relief with respect to the Classes as a whole. Such questions of law and fact common to the Classes include, but are not limited to:

a. Whether Defendants and their co-conspirators engaged in a contract, combination, or conspiracy to place limits on common vehicle component innovations and coordinate virtually every aspect of the manufacture and sale of the German Luxury Vehicles with the purpose and effect to artificially inflate the price of German Luxury Vehicles sold in the United States;

b. The identity of the participants of the alleged conspiracy;

c. The duration of the alleged conspiracy and the acts carried out by Defendants and their co-conspirators in furtherance of the conspiracy;

d. Whether the alleged conspiracy violated section 1 of the Sherman Act;

e. Whether the alleged conspiracy violated state antitrust, unfair competition, or consumer protection laws;

f. Whether the conduct of Defendants and their co-conspirators, as alleged in this Complaint, caused injury to the business or property of Plaintiffs and the members of the Classes;

---

CLASS ACTION COMPLAINT

g. The effect of the alleged conspiracy on the prices of German Luxury Vehicles sold in the United States during the Class Period;

h. The appropriate class-wide measure of damages for the Damages Class;

i. Whether Plaintiffs and the members of the Classes had any reason to know or suspect the conspiracy, or any means to discover the conspiracy earlier;

j. Whether Defendants and their co-conspirators fraudulently concealed the conspiracy's existence from Plaintiffs and the members of the Classes;

k. Whether Defendants unjustly enriched themselves to the detriment of the Plaintiffs and the members of the Classes, thereby entitling Plaintiffs and the members of the Classes to disgorgement of all benefits derived by Defendants;

l. The appropriate injunctive and related equitable relief for the Nationwide Injunctive Relief Class; and

145. The questions of law and fact common to the members of the Classes predominate over any questions affecting only individual members, including legal and factual issues relating to liability, causation, and damages.  Plaintiffs contemplate notice by publication to the proposed Classes.

**D.  Typicality**

146. Plaintiffs' claims are typical of the claims of the members of the Classes, and Plaintiffs will fairly and adequately protect the interests of the Classes. Plaintiffs and all members of the Classes are similarly affected by Defendants' wrongful conduct in that they paid artificially inflated prices for German Luxury Vehicles purchased or leased from Defendants.

### E.    Adequacy

147.    Plaintiffs' claims arise out of the same common course of conduct giving rise to the claims of the other members of the Classes. Plaintiffs' interests are coincident with, and not antagonistic to, those of the other members of the Classes. Plaintiffs are represented by counsel who are competent and experienced in the prosecution of antitrust and class action litigation.

### F.    Superiority

148.    Class action treatment is a superior method for the fair and efficient adjudication of the controversy, in that, among other things, such treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently and without the unnecessary duplication of evidence, effort and expense that numerous individual actions would engender. The benefits of proceeding through the class mechanism, including providing injured persons or entities with a method for obtaining redress for claims that might not be practicable to pursue individually, substantially outweigh any difficulties that may arise in the management of this class action.

149.    The prosecution of separate actions by individual members of the Classes would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

---

CLASS ACTION COMPLAINT

# VII.   ANTITRUST INJURY

150.   Defendants' anticompetitive conduct had the following effects, among others:

> a.  Price competition and innovation has been restrained or eliminated with respect to German Luxury Vehicles;
>
> b.  The prices of German Luxury Vehicles have been fixed, raised, stabilized, or maintained at artificially inflated levels and technical innovations have been suppressed;
>
> c.  Indirect purchasers and lessees of German Luxury Vehicles have been deprived of free and open competition; and
>
> d.  End-user consumers of German Luxury Vehicles who indirectly purchased or leased German Luxury Vehicles, including Plaintiffs and Class Members, paid artificially inflated prices.

151.   The German Luxury Vehicles that Plaintiffs and Class Members purchased or leased were in substantially the same form as when they were initially sold by Defendants. As a result, the German Luxury Vehicles follow a traceable physical chain from Defendants to the Plaintiffs and Class Members, and the overcharges on German Luxury Vehicles can be traced from Defendants to Plaintiffs and Class Members.

152.   As a matter of economic principle, firms must recover the short-run variable costs of production when they price their products for the market, which ultimately get passed on to consumers in the form of higher retail prices. For a firm to be a profitable, valid concern, the firm must recover its marginal costs of production. In a perfectly competitive market, firms price at marginal cost and when marginal costs increase, those cost increases are fully passed through to the consumer. As a general matter, the pass

through rate will be determined by the relative elasticities of supply and demand. When demand is inelastic (as it likely is for German Luxury Vehicles), the pass-through rate to end users will be 100 percent or higher.

153.   Consequently, while the direct purchasers were the first to pay supra-competitive prices, all of the overcharge was passed along the distribution chain and absorbed by Plaintiffs and Class Members when they purchased or leased the German Luxury Vehicles.

154.   Commonly used and well-accepted economic models can be used to measure both the extent and the amount of the supra-competitive charge passed through the distribution chain to end-user consumers. Thus, the economic harm to Plaintiffs and the Class Members can be quantified.

155.   The purpose of Defendants' conspiratorial conduct and that of their co-conspirators was to raise, fix, or maintain the price of German Luxury Vehicles and, as a direct and foreseeable result, Plaintiffs and the Classes paid supra-competitive prices for German Luxury Vehicles during the Class Period.

156.   By reason of the alleged violations of the antitrust laws, Plaintiffs and the Classes have sustained injury to their businesses or property, having paid higher prices for German Luxury Vehicles than they would have paid in the absence of Defendants' illegal contract, combination, or conspiracy.  As a result of said conduct, members of the

Damages Class have suffered damages and members of the Nationwide Injunctive Relief Class are entitled to equitable and injunctive relief as requested herein.

157.    The events described herein constitute an antitrust injury of the type that the antitrust laws were intended to deter and punish.

## VIII.  VIOLATION OF THE SHERMAN ACT

**FIRST CLAIM FOR RELIEF**
**Violation of Section 1 of the Sherman Act**
**15 U.S.C. § 1**
**(On Behalf of Nationwide Injunctive Relief Class)**

158.    Plaintiffs incorporate by reference the preceding paragraphs as if fully set forth herein.

159.    Beginning at a time currently unknown to Plaintiffs, but at least by 1996 and continuing through the present, Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy in restraint of trade to artificially inflate, raise, maintain, and/or stabilize the prices of German Luxury Vehicles within the United States, its territories, and the District of Columbia in violation of Section 1 of the Sherman Act (15 U.S.C. § 1).

160.    Defendants and their co-conspirators agreed to, and did in fact, restrain trade or commerce by inflating, raising, maintaining, and/or stabilizing the prices of German Luxury Vehicles.

161.    In formulating and effectuating their contract, combination, or conspiracy, Defendants and their co-conspirators engaged in anticompetitive activities, including but

---

CLASS ACTION COMPLAINT

not limited to the acts, practices, and course of conduct set forth above, the purpose and effect of which were to artificially inflate, raise, maintain, and/or stabilize the prices of German Luxury Vehicles.

162.    Among other things, Defendants conspired and agreed to reduce or eliminate competition for technological innovation and improvements, *inter alia*, with respect to clean diesel technology, suspension, electronic systems, transmissions, and automobile propulsion, among others. As a result of this conspiracy, the prices paid by Plaintiffs and the Classes for German Luxury Vehicles were inflated.

163.    Competition in the market for German Luxury Vehicles has been reduced or eliminated. The contract, combination, or conspiracy alleged herein has had the following effects, among others:

(a) Price competition among Defendants in the sale of German Luxury Vehicles has been restrained, suppressed, or eliminated in the United States;

(b) Prices for German Luxury Vehicles sold by Defendants have been fixed, raised, maintained and stabilized at artificially high, non-competitive levels in the United States; and

(c) Indirect purchasers of German Luxury Vehicles have been deprived of the benefits of competition and innovation.

164.    Plaintiffs and members of the Damages Class have been injured and will continue to be injured in their business and property by paying more for German Luxury Vehicles purchased or leased indirectly from Defendants and their co-conspirators than

---

CLASS ACTION COMPLAINT

they would have paid and will pay in the absence of the alleged contract, combination, or conspiracy.

165.  Plaintiffs and members of the Damages Class are entitled to injunctive relief under Section 16 of the Clayton Act and applicable state laws, preventing and restraining Defendants from the violations alleged herein.

## IX.    VIOLATIONS OF STATE ANTITRUST LAWS

166.  Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

167.  During the Class Period, Defendants and their co-conspirators engaged in a continuing contract, combination, or conspiracy with respect to the sale of German Luxury Vehicles in unreasonable restraint of trade and commerce and in violation of the various state antitrust and other statutes set forth below.

168.  The contract, combination, or conspiracy consisted of an agreement among Defendants and their co-conspirators to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive levels prices for German Luxury Vehicles in the United States.

169.  In formulating and effectuating this conspiracy, Defendants and their co-conspirators performed acts in furtherance of the contract, combination, or conspiracy, including participating in meetings and communications among themselves in Europe, the United States, and elsewhere during which they agreed to fix, raise, inflate, stabilize,

and/or maintain at artificially supra-competitive levels prices for German Luxury Vehicles in the United States.

170.   Defendants and their co-conspirators engaged in the actions described above for the purpose of carrying out their unlawful agreements to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive levels prices for German Luxury Vehicles in the United States, including but not limited to incorporation of a Diesel Premium for alleged innovative features for German Luxury Vehicles with diesel engines achieved through legitimate competition, as well as a German Premium for vehicle components and features that consumers believed were invented and designed for gasoline or diesel German Luxury Vehicles through legitimate competition.

171.   Plaintiffs and members of the Damages Class bring the following Claims for Relief under the referenced state antitrust laws.

172.   Defendants' anticompetitive acts described above were knowing and willful and constitute violations or flagrant violations of the following state antitrust statutes.

**SECOND CLAIM FOR RELIEF**
**Violation of Arizona's Uniform State Antitrust Act,**
**Ariz. Rev. Stat. § 44-1401, *et seq.***
**(On Behalf of the Arizona Class)**

173.   Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

---

CLASS ACTION COMPLAINT

174. Defendants have entered into an unlawful contract, combination, or conspiracy in restraint of trade in violation of the Arizona Revised Statutes, §§ 44-1401, *et seq.*

175. Defendants' contract, combination, or conspiracy had the following effects: (1) German Luxury Vehicles price competition was restrained, suppressed, and eliminated throughout Arizona; (2) German Luxury Vehicles prices were raised to artificially high levels throughout Arizona; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition resulting in suppression of innovation; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

176. During the Class Period, Defendants' illegal conduct substantially affected Arizona commerce.

177. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

178. Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Ariz. Rev. Stat. §§ 44-1401, *et seq.*

---

CLASS ACTION COMPLAINT

**THIRD CLAIM FOR RELIEF**
**Violation of the Arkansas Unfair Practices Act,**
**Ark. Code Ann. § 4-75-201, *et seq.* and § 4-75-301, *et seq.***
**(On Behalf of the Arkansas Class)**

179.   Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

180.   By reason of the conduct alleged herein, Defendants have violated Ark. Code Ann. § 4-75-201, *et seq.* and § 4-75-301, *et seq.*

181.   Defendants entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the German Luxury Vehicle market, a substantial part of which occurred within Arkansas.

182.   Defendants contracted, combined, or conspired to establish, maintain, or use a monopoly, or attempted to establish a monopoly, of trade or commerce in the German Luxury Vehicles markets, a substantial part of which occurred within Arkansas, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the German Luxury Vehicle market.

183.   Defendants' violations of Arkansas law were flagrant.

184.   Defendants' unlawful conduct substantially affected Arkansas's trade and commerce.

185.   Defendants' unlawful conduct caused injury, and as a result, Plaintiffs and the members of the Damages Class have been damaged in their business or property and are threatened with further damages.

CLASS ACTION COMPLAINT

186.   By reason of the foregoing, Plaintiffs and members of the Damages Class are entitled to seek all forms of relief, including treble damages, reasonable attorney's fees and costs, and injunctive relief available under Ark. Code Ann. § 4-75-211.

## FOURTH CLAIM FOR RELIEF
### Violation of California's Cartwright Act,
### Cal. Bus. & Prof. Code § 16700, *et seq.*
### (On Behalf of the California Class)

187.   Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

188.   Defendants have entered into an unlawful contract, combination, or conspiracy agreement in restraint of trade in violation of the California Business and Professions Code, §§ 16700, *et seq.*

189.   During the Class Period, Defendants and their co-conspirators entered into and engaged in a continuing unlawful trust in restraint of the trade and commerce described above in violation of Section 16720, California Business and Professions Code. Defendants, and each of them, have acted in violation of Section 16720 to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive levels prices for German Luxury Vehicles in the United States.

190.   The aforesaid violations of Section 16720, California Business and Professions Code, consisted, without limitation, of a continuing unlawful trust and concert of action among Defendants and their co-conspirators, the substantial terms of

---

CLASS ACTION COMPLAINT

which were to fix, raise, inflate, stabilize, and/or maintain at artificially supra-competitive levels prices for German Luxury Vehicles in the United States.

191.    For the purpose of forming and effectuating the unlawful trust, Defendants and their co-conspirators have done those things which they combined and conspired to do, including but not limited to the acts, practices and course of conduct set forth above and fixing, raising, stabilizing, and maintaining the price of German Luxury Vehicles.

192.    The contract, combination, or conspiracy alleged herein has had, *inter alia*, the following effects: (1) Price competition in the sale of German Luxury Vehicles has been restrained, suppressed, and/or eliminated in the State of California; (2) Prices for German Luxury Vehicles sold by Defendants and their co-conspirators have been fixed, raised, stabilized, and maintained at artificially high, non-competitive levels in the State of California and throughout the United States.; and (3) Those who purchased or leased German Luxury Vehicles directly or indirectly from Defendants and their co-conspirators have been deprived of the benefit of free and open competition.

193.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property in that they paid more for German Luxury Vehicles than they otherwise would have paid in the absence of Defendants' unlawful conduct. As a result of Defendants' violation of Section 16720 of the California Business and Professions Code, Plaintiffs and members of the Damages Class seek treble damages and their cost of suit, including a reasonable

---

CLASS ACTION COMPLAINT

attorney's fee, pursuant to Section 16750(a) of the California Business and Professions Code.

## FIFTH CLAIM FOR RELIEF
### Violation of the District of Columbia Antitrust Act,
### D.C. Code § 28-4501, *et seq.*
### (On Behalf of the District of Columbia Class)

194.   Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

195.   Defendants have entered into an unlawful agreement in restraint of trade in violation of the District of Columbia Code Annotated §§ 28-4501, *et seq.*

196.   Defendants' contract, combination, or conspiracy had the following effects: (1) German Luxury Vehicles price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) German Luxury Vehicles prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the District of Columbia; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

197.   During the Class Period, Defendants' illegal conduct substantially affected District of Columbia commerce.

198.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

CLASS ACTION COMPLAINT

199.    By reason of the foregoing, Defendants have entered into a contract, combination, or conspiracy in restraint of trade in violation of District of Columbia Code Ann. §§ 28-4501, *et seq.*

200.    Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under District of Columbia Code Ann. §§ 28-4501, *et seq.*

## SIXTH CLAIM FOR RELIEF
### Violation of the Iowa Competition Law
### Iowa Code § 553.1, *et seq.*
### (On Behalf of the Iowa Class)

201.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

202.    Defendants have entered into an unlawful contract, combination, or conspiracy in restraint of trade in violation of Iowa Code §§ 553.1, *et seq.*

203.    Defendants' contract, combination, or conspiracy had the following effects: (1) German Luxury Vehicles price competition was restrained, suppressed, and eliminated throughout Iowa; (2) German Luxury Vehicles prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Iowa; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

204.    During the Class Period, Defendants' illegal conduct substantially affected Iowa commerce.

---

CLASS ACTION COMPLAINT

205.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

206.    By reason of the foregoing, Defendants have entered into a contract, combination, or conspiracy in restraint of trade in violation of Iowa Code §§ 553.1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Iowa Code §§ 553.1, *et seq.*

### SEVENTH CLAIM FOR RELIEF
### Violation of the Kansas Restraint of Trade Act
### Kan. Stat. Ann. § 50-101, *et seq.*
### (On Behalf of the Kansas Class)

207.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

208.    Defendants have entered into an unlawful contract, combination, or conspiracy  in restraint of trade in violation of the Kansas Statutes Annotated, §§ 50-101, *et seq.*

209.    Defendants' contract, combination, or conspiracy had the following effects: (1) German Luxury Vehicles price competition was restrained, suppressed, and eliminated throughout Kansas; (2) German Luxury Vehicles prices were raised, fixed, maintained, and stabilized at artificially high prices throughout Kansas; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4)

---

CLASS ACTION COMPLAINT

Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

210.   During the Class Period, Defendants' illegal conduct substantially affected Kansas commerce.

211.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

212.   By reason of the foregoing, Defendants have entered into a contract, combination, or conspiracy in restraint of trade in violation of Kansas Stat. Ann. §§ 50-101, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all forms of relief available under Kansas Stat. Ann. §§ 50-101, *et seq.*

**EIGHTH CLAIM FOR RELIEF**
**Violation of the Maine's Antitrust Statute**
**Me. Rev. Stat. Ann. Tit. 10 § 1101, *et seq.***
**(On Behalf of the Maine Class)**

213.   Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

214.   Defendants have entered into an unlawful contract, combination, or conspiracy in restraint of trade in violation of the Maine Revised Statutes, Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.*

215.   Defendants' contract, combination, or conspiracy had the following effects: (1) German Luxury Vehicles price competition was restrained, suppressed, and

CLASS ACTION COMPLAINT

eliminated throughout Maine; (2) German Luxury Vehicles prices were raised, fixed, maintained, and stabilized at artificially high prices throughout Maine; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

216.    During the Class Period, Defendants' illegal conduct substantially affected Maine commerce.

217.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

218.    By reason of the foregoing, Defendants have entered into a contract, combination, or conspiracy in restraint of trade in violation of Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Maine Rev. Stat. Ann. 10, §§ 1101, *et seq.*

**NINTH CLAIM FOR RELIEF**
**Violation of the Michigan Antitrust Reform Act**
**Mich. Comp. Laws § 445.771, *et seq.***
**(On Behalf of the Michigan Class)**

219.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

---

CLASS ACTION COMPLAINT

220. Defendants have entered into an unlawful contract, combination, or conspiracy in restraint of trade in violation of the Michigan Compiled Laws Annotated §§ 445.771, *et seq.*

221. Defendants' contract, combination, or conspiracy had the following effects: (1) German Luxury Vehicles price competition was restrained, suppressed, and eliminated throughout Michigan; (2) German Luxury Vehicles prices were raised, fixed, maintained, and stabilized at artificially high prices throughout Michigan; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

222. During the Class Period, Defendants' illegal conduct substantially affected Michigan commerce.

223. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

224. By reason of the foregoing, Defendants have entered into a contract, combination, or conspiracy in restraint of trade in violation of Michigan Comp. Laws Ann. §§ 445.771, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Michigan Comp. Laws Ann. §§ 445.771, *et seq.*

---

CLASS ACTION COMPLAINT

# TENTH CLAIM FOR RELIEF
## Violation of the Minnesota Antitrust Law,
## Minn. Stat. § 325D.49, *et seq.*
## (On Behalf of the Minnesota Class)

225.   Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

226.   Defendants have entered into an unlawful contract, combination, or conspiracy in restraint of trade in violation of the Minnesota Annotated Statutes §§ 325D.49, *et seq.*

227.   Defendants' contract, combination, or conspiracy had the following effects: (1) German Luxury Vehicles price competition was restrained, suppressed, and eliminated throughout Minnesota; (2) German Luxury Vehicle prices were raised, fixed, maintained, and stabilized at artificially high prices throughout Minnesota; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

228.   During the Class Period, Defendants' illegal conduct substantially affected Minnesota commerce.

229.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

---

CLASS ACTION COMPLAINT

230.   By reason of the foregoing, Defendants have entered into a contract, combination, or conspiracy in restraint of trade in violation of Minnesota Stat. §§ 325D.49, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Minn. Stat. §§ 325D.49, *et seq.* and Minn. Stat. § 8.31, subd. 3a.

**ELEVENTH CLAIM FOR RELIEF**
**Violation of the Mississippi Antitrust Statute,**
**Miss. Code Ann. § 75-21-1, *et seq.***
**(On Behalf of the Mississippi Class)**

231.   Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

232.   Defendants have entered into an unlawful contract, combination, or conspiracy in restraint of trade in violation of the Mississippi Code Annotated §§ 75-21-1, *et seq.*

233.   Defendants' contract, combination, or conspiracy had the following effects: (1) German Luxury Vehicles price competition was restrained, suppressed, and eliminated throughout Mississippi; (2) German Luxury Vehicles prices were raised, fixed, maintained, and stabilized at artificially high prices throughout Mississippi; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

234.   During the Class Period, Defendants' illegal conduct substantially affected Mississippi commerce.

235.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

236.   By reason of the foregoing, Defendants have entered into a contract, combination, or conspiracy in restraint of trade in violation of Mississippi Code Ann. §§ 75-21-1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Mississippi Code Ann. §§ 75-21-1, *et seq.*

**TWELFTH CLAIM FOR RELIEF**
**Violation of the Nebraska Junkin Act,**
**Neb. Rev. Stat. § 59-801, *et seq.***
**(On Behalf of the Nebraska Class)**

237.   Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

238.   Defendants have entered into an unlawful contract, combination, or conspiracy in restraint of trade in violation of the Nebraska Revised Statutes §§ 59-801, *et seq.*

239.   Defendants' contract, combination, or conspiracy had the following effects: (1) German Luxury Vehicles price competition was restrained, suppressed, and eliminated throughout Nebraska; (2) German Luxury Vehicles prices were raised, fixed, maintained, and stabilized at artificially high prices throughout Nebraska; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4)

Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

240.   During the Class Period, Defendants' illegal conduct substantially affected Nebraska commerce.

241.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

242.   By reason of the foregoing, Defendants have entered into a contract, combination, or conspiracy in restraint of trade in violation of Nebraska Revised Statutes §§ 59-801, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Nebraska Revised Statutes §§ 59-801, *et seq.*

**THIRTEENTH CLAIM FOR RELIEF**
**Violation of the Nevada Unfair Trade Practices Act,**
**Nev. Rev. Stat. § 598A.010, *et seq.***
**(On Behalf of the Nevada Class)**

243.   Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

244.   Defendants have entered into an unlawful contract, combination, or conspiracy in restraint of trade in violation of the Nevada Revised Statutes Annotated §§ 598A.010, *et seq.*

245.   Defendants' contract, combination, or conspiracy had the following effects: (1) German Luxury Vehicles price competition was restrained, suppressed, and

eliminated throughout Nevada; (2) German Luxury Vehicles prices were raised, fixed, maintained, and stabilized at artificially high prices throughout Nevada; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

246.   During the Class Period, Defendants' illegal conduct substantially affected Nevada commerce.

247.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

*248.*   By reason of the foregoing, Defendants have entered into a contract, combination, or conspiracy in restraint of trade in violation of Nevada Rev. Stat. Ann. §§ 598A.010, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Nevada Rev. Stat. Ann. §§ 598A.010, *et seq.*

### FOURTEENTH CLAIM FOR RELIEF
**Violation of New Hampshire's Antitrust Statute,**
**N.H. Rev. Stat. Ann. Tit. XXXI, § 356,** *et seq.*
**(On Behalf of the New Hampshire Class)**

249.   Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

---

CLASS ACTION COMPLAINT

250.   Defendants have entered into an unlawful contract, combination, or conspiracy in restraint of trade in violation of the New Hampshire Revised Statutes §§ 356:1, *et seq.*

251.   Defendants' contract, combination, or conspiracy had the following effects: (1) German Luxury Vehicles price competition was restrained, suppressed, and eliminated throughout New Hampshire; (2) German Luxury Vehicles prices were raised, fixed, maintained, and stabilized at artificially high prices throughout New Hampshire ; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

252.   During the Class Period, Defendants' illegal conduct substantially affected New Hampshire commerce.

253.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

254.   By reason of the foregoing, Defendants have entered into a contract, combination, or conspiracy in restraint of trade in violation of New Hampshire Revised Statutes §§ 356:1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under New Hampshire Revised Statutes §§ 356:1, *et seq.*

CLASS ACTION COMPLAINT

**FIFTEENTH CLAIM FOR RELIEF**
**Violation of the New Mexico Antitrust Act,**
**N.M. Stat. Ann. §§ 57-1-1, *et seq.***
**(On Behalf of the New Mexico Class)**

255.   Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

256.   Defendants have entered into an unlawful contract, combination, or conspiracy in restraint of trade in violation of the New Mexico Statutes Annotated §§ 57-1-1, *et seq.*

257.   Defendants' contract, combination, or conspiracy had the following effects: (1) German Luxury Vehicles price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) German Luxury Vehicles prices were raised, fixed, maintained, and stabilized at artificially high prices throughout New Mexico; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

258.   During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce.

259.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

---

CLASS ACTION COMPLAINT

260.  By reason of the foregoing, Defendants have entered into a contract, combination, or conspiracy in restraint of trade in violation of New Mexico Stat. Ann. §§ 57-1-1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under New Mexico Stat. Ann. §§ 571-1, *et seq.*

## SIXTEENTH CLAIM FOR RELIEF
### Violation of Section 340 of the New York General Business Law
### (On Behalf of the New York Class)

261.  Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

262.  Defendants have entered into an unlawful contract, combination, or conspiracy in restraint of trade in violation of the New York General Business Laws §§ 340, *et seq.*

263.  Defendants' contract, combination, or conspiracy had the following effects: (1) German Luxury Vehicles price competition was restrained, suppressed, and eliminated throughout New York; (2) German Luxury Vehicles prices were raised, fixed, maintained, and stabilized at artificially high prices throughout New York; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles when they purchased German Luxury Vehicles, or purchased products that were otherwise of lower quality than they would have been

---

absent the conspirators illegal acts, or were unable to purchase products that they otherwise would have purchased absent the illegal conduct.

264.   During the Class Period, Defendants' illegal conduct substantially affected New York commerce.

265.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

266.   By reason of the foregoing, Defendants have entered into a contract, combination, or conspiracy in restraint of trade in violation of the New York Donnelly Act, §§ 340, *et seq.* The conduct set forth above is a *per se* violation of the Act. Accordingly, Plaintiffs and members of the Damages Class seek all relief available under New York Gen. Bus. Law §§ 340, *et seq.*

**SEVENTEENTH CLAIM FOR RELIEF**
**Violation of the North Carolina General Statutes,**
**N.C. Gen. Stat. § 75-1,** *et seq.*
**(On Behalf of the North Carolina Class)**

267.   Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

268.   Defendants have entered into an unlawful contract, combination, or conspiracy in restraint of trade in violation of the North Carolina General Statutes §§ 75-1, *et seq.*

---

CLASS ACTION COMPLAINT

269.   Defendants' contract, combination, or conspiracy had the following effects: (1) German Luxury Vehicles price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) German Luxury Vehicle prices were raised, fixed, maintained, and stabilized at artificially high prices throughout North Carolina; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

270.   During the Class Period, Defendants' illegal conduct substantially affected North Carolina commerce.

271.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

272.   By reason of the foregoing, Defendants have entered into a contract, combination, or conspiracy in restraint of trade in violation of North Carolina Gen. Stat. §§ 75-1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under North Carolina Gen. Stat. §§ 75-1, *et. seq*.

**EIGHTEENTH CLAIM FOR RELIEF**
**Violation of the North Dakota Uniform State Antitrust Act,**
**N.D. Cent. Code § 51-08.1, *et seq.***
**(On Behalf of the North Dakota Class)**

273.   Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

CLASS ACTION COMPLAINT

274. Defendants have entered into an unlawful contract, combination, or conspiracy in restraint of trade in violation of the North Dakota Century Code §§ 51-08.1-01, *et seq.*

275. Defendants' contract, combination, or conspiracy had the following effects: (1) German Luxury Vehicles price competition was restrained, suppressed, and eliminated throughout North Dakota; (2) German Luxury Vehicle prices were raised, fixed, maintained, and stabilized at artificially high prices throughout North Dakota; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

276. During the Class Period, Defendants' illegal conduct had a substantial effect on North Dakota commerce.

277. As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

278. By reason of the foregoing, Defendants have entered into a contract, combination, or conspiracy in restraint of trade in violation of North Dakota Cent. Code §§ 51-08.1-01, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under North Dakota Cent. Code §§ 51-08.1-01, *et seq.*

---

CLASS ACTION COMPLAINT

## NINETEENTH CLAIM FOR RELIEF
### Violation of the Oregon Antitrust Law,
### Or. Rev. Stat. § 646.705, *et seq.*
### (On Behalf of the Oregon Class)

279.   Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

280.   Defendants have entered into an unlawful contract, combination, or conspiracy in restraint of trade in violation of the Oregon Revised Statutes §§ 646.705, *et seq.*

281.   Defendants' contract, combination, or conspiracy had the following effects: (1) German Luxury Vehicles price competition was restrained, suppressed, and eliminated throughout Oregon; (2) German Luxury Vehicles prices were raised, fixed, maintained, and stabilized at artificially high prices throughout; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

282.   During the Class Period, Defendants' illegal conduct had a substantial effect on Oregon commerce.

283.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

---

CLASS ACTION COMPLAINT

284.   By reason of the foregoing, Defendants have entered into a contract, combination, or conspiracy in restraint of trade in violation of Oregon Revised Statutes §§ 646.705, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Oregon Revised Statutes §§ 646.705, *et seq.*

## TWENTIETH CLAIM FOR RELIEF
### Violation of the Rhode Island Antitrust Act,
### R.I. Gen Laws § 6-36-1, *et seq.*
### (On Behalf of the Rhode Island Class)

285.   Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

286.   The Rhode Island Antitrust Act aims to promote the unhampered growth of commerce and industry throughout Rhode Island by prohibiting unreasonable restraints of trade and monopolistic practices that hamper, prevent or decrease competition.  R.I. Gen. Laws § 636-2(a)(2).

287.   But for Defendants' conduct set forth herein, the price of Defendants' German Luxury Vehicles would have been lower, in an amount to be determined at trial.

288.   Under the Rhode Island Antitrust Act, as of January 1, 2008, indirect purchasers have standing to maintain an action based on the facts alleged in this Complaint.  R.I. Gen Laws § 6-36-11-(a).  In Rhode Island, the claims of Plaintiffs and members of the Damages Class alleged herein run from January 1, 1990, through the date that the effects of Defendants' anticompetitive conduct cease.

---

CLASS ACTION COMPLAINT

289.   Defendants contracted, combined, or conspired in restraint of trade of German Luxury Vehicles within the intrastate commerce of Rhode Island, and established, maintained or used, or attempted to establish, maintain or use, a monopoly in the trade of German Luxury Vehicles for the purpose of excluding competition or controlling, fixing or maintaining prices within the intrastate commerce of Rhode Island, in violation of R.I. Gen. Laws § 6-36-1, *et seq.*

290.   Plaintiffs and members of the Damages Class were injured with respect to purchases or Lessees of German Luxury Vehicles in Rhode Island and are entitled to all forms of relief, including actual damages, treble damages, reasonable costs, reasonable attorneys' fees, and injunctive relief.

**TWENTY-FIRST CLAIM FOR RELIEF**
**Violation of the South Dakota Antitrust Statute,**
**S.D. Codified Laws § 37-1-3.1, *et seq.***
**(On Behalf of the South Dakota Class)**

291.   Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

292.   Defendants have entered into an unlawful contract, combination, or conspiracy in restraint of trade in violation of the South Dakota Codified Laws §§ 37-1-3.1, *et seq.*

293.   Defendants' contract, combination, or conspiracy had the following effects: (1) German Luxury Vehicles price competition was restrained, suppressed, and eliminated throughout South Dakota; (2) German Luxury Vehicles prices were raised,

CLASS ACTION COMPLAINT

fixed, maintained, and stabilized at artificially high prices throughout South Dakota; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

294.   During the Class Period, Defendants' illegal conduct had a substantial effect on South Dakota commerce.

295.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

296.   By reason of the foregoing, Defendants have entered into a contract, combination, or conspiracy in restraint of trade in violation of South Dakota Codified Laws Ann. §§ 37-1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under South Dakota Codified Laws Ann. §§ 37-1, *et seq.*

**TWENTY-SECOND CLAIM FOR RELIEF**
**Violation of the Tennessee Trade Practices Act,**
**Tenn. Code, § 47-25-101, *et seq.***
**(On Behalf of the Tennessee Class)**

297.   Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

298.   Defendants have entered into an unlawful contract, combination, or agreement in restraint of trade in violation of the Tennessee Code Annotated §§ 47-25-101, *et seq.*

CLASS ACTION COMPLAINT

299.    Defendants' contract, combination, or conspiracy had the following effects: (1) German Luxury Vehicles price competition was restrained, suppressed, and eliminated throughout Tennessee; (2) German Luxury Vehicles prices were raised, fixed, maintained, and stabilized at artificially high prices throughout Tennessee; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

300.    During the Class Period, Defendants' illegal conduct had a substantial effect on Tennessee commerce.

301.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

302.    By reason of the foregoing, Defendants have entered into a contract, combination, or conspiracy in restraint of trade in violation of Tennessee Code Ann. §§ 47-25-101, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Tennessee Code Ann. §§ 47-25-101, *et seq.*

**TWENTY-THIRD CLAIM FOR RELIEF**
**Violation of the Utah Antitrust Act,**
**Utah Code Ann. §§ 76-10-911, *et seq.***
**(On Behalf of the Utah Class)**

303.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

CLASS ACTION COMPLAINT

304.    Defendants have entered into an unlawful contract, combination, or conspiracy in restraint of trade in violation of the Utah Code Annotated §§ 76-10-3101, *et seq.*

305.    Defendants' contract, combination, or conspiracy had the following effects: (1) German Luxury Vehicles price competition was restrained, suppressed, and eliminated throughout Utah; (2) German Luxury Vehicles prices were raised, fixed, maintained, and stabilized at artificially high prices throughout Utah; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

306.    During the Class Period, Defendants' illegal conduct had a substantial effect on Utah commerce.

307.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

308.    By reason of the foregoing, Defendants have entered into a contract, combination, or conspiracy in restraint of trade in violation of Utah Code Annotated §§ 76-10-3101, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Utah Code Annotated §§ 76-10-3101, *et seq.*

---

CLASS ACTION COMPLAINT

### TWENTY-FOURTH CLAIM FOR RELIEF
### Violation of the West Virginia Antitrust Act,
### W. Va. Code §47-18-1, *et seq.*
### (On Behalf of the West Virginia Class)

309.   Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

310.   Defendants have entered into an unlawful contract, combination, or conspiracy in restraint of trade in violation of the West Virginia Code §§ 47-18-1, *et seq.*

311.   Defendants' contract, combination, or conspiracy had the following effects: (1) German Luxury Vehicles price competition was restrained, suppressed, and eliminated throughout West Virginia; (2) German Luxury Vehicles prices were raised, fixed, maintained, and stabilized at artificially high prices throughout West Virginia; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

312.   During the Class Period, Defendants' illegal conduct had a substantial effect on West Virginia commerce.

313.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

314.   By reason of the foregoing, Defendants have entered into a contract, combination, or conspiracy in restraint of trade in violation of West Virginia Code §§ 47-

---

CLASS ACTION COMPLAINT

18-1, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under West Virginia Code §§ 47-181, *et seq.*

**TWENTY-FIFTH CLAIM FOR RELIEF**
**Violation of the Wisconsin Antitrust Act,**
**Wis. Stat. Ann. § 133.01(1), *et seq.***
**(On Behalf of the Wisconsin Class)**

315.   Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

316.   Defendants have entered into an unlawful contract, combination, or conspiracy in restraint of trade in violation of the Wisconsin Statutes §§ 133.01, *et seq.*

317.   Defendants' contract, combination, or conspiracy had the following effects: (1) German Luxury Vehicles price competition was restrained, suppressed, and eliminated throughout Wisconsin; (2) German Luxury Vehicles prices were raised, fixed, maintained, and stabilized at artificially high prices throughout Wisconsin (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

318.   During the Class Period, Defendants' illegal conduct had a substantial effect on Wisconsin commerce.

319.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business and property and are threatened with further injury.

CLASS ACTION COMPLAINT

320.  By reason of the foregoing, Defendants have entered into a contract, combination, or conspiracy in restraint of trade in violation of Wisconsin Stat. §§ 133.01, *et seq.* Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Wisconsin Stat. §§ 133.01, *et seq.*

## X.    VIOLATION OF STATE CONSUMER PROTECTION LAWS

321.  Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

322.  Defendants engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of the state consumer protection and unfair competition statutes listed below.

323.  Plaintiffs and members of the Damages Class bring the following Claims for Relief under the referenced consumer protection laws.

**TWENTY-SIXTH CLAIM FOR RELIEF**
**Violation of California's Unfair Competition Law**
**Cal. Bus. & Prof. Code § 17200, *et seq.* (the "UCL")**
**(On Behalf of the California Class)**

324.  Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs in this Complaint.

325.  Defendants have engaged in unfair competition or unfair, unconscionable, deceptive or fraudulent acts or practices in violation of California Business and Professions Code § 17200, *et seq.*, which prohibits any "unlawful, unfair, or fraudulent business act or practice."

---

CLASS ACTION COMPLAINT

326.    During the Class Period, Defendants marketed, sold, or distributed German Luxury Vehicles in California, and committed and continue to commit acts of unfair competition, as defined by Sections 17200, *et seq.* of the California Business and Professions Code, by engaging in the acts and practices specified above.

327.    This claim is instituted pursuant to Sections 17203 and 17204 of the California Business and Professions Code, to obtain restitution from these Defendants for acts, as alleged herein, that violated Section 17200 of the California Business and Professions Code, commonly known as the Unfair Competition Law.

328.    Defendants' conduct as alleged herein violated Section 17200. The acts, omissions, misrepresentations, practices and non-disclosures of Defendants, as alleged herein, constituted a common, continuous, and continuing course of conduct of unfair competition by means of unfair, unlawful, and/or fraudulent business acts or practices within the meaning of California Business and Professions Code, Section 17200, *et seq.*, including, but not limited to, the following: (1) the violations of Section 1 of the Sherman Act, as set forth above; and (2) the violations of Section 16720, *et seq.*, of the California Business and Professions Code, set forth above.

329.    Defendants' acts, omissions, misrepresentations, practices, and non-disclosures, as described above, whether or not in violation of Section 16720, *et seq.*, of the California Business and Professions Code, and whether or not concerted or independent acts, are otherwise unfair, unconscionable, unlawful or fraudulent.

CLASS ACTION COMPLAINT

330. Defendants' acts or practices are unfair to consumers of German Luxury Vehicles in the State of California within the meaning of Section 17200, California Business and Professions Code.

331. Defendants' acts and practices are fraudulent or deceptive within the meaning of Section 17200 of the California Business and Professions Code.

332. Plaintiffs and members of the Damages Class are entitled to full restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business acts or practices.

333. The illegal conduct alleged herein is continuing and there is no indication that Defendants will not continue such activity into the future.

334. The unlawful and unfair business practices of Defendants, each of them, have caused and continue to cause Plaintiffs and members of the Damages Class to pay supra-competitive and artificially-inflated prices for German Luxury Vehicles. Plaintiffs and members of the Damages Class suffered injury in fact and lost money or property as a result of such unfair competition.

335. The conduct of Defendants as alleged in this Complaint violates Section 17200 of the California Business and Professions Code.

336. As alleged in this Complaint, Defendants and their co-conspirators have been unjustly enriched as a result of their wrongful conduct and by Defendants' unfair competition. Plaintiffs and members of the Damages Class are accordingly entitled to

CLASS ACTION COMPLAINT

equitable relief including restitution and/or disgorgement of all revenues, earnings, profits, compensation, and benefits that may have been obtained by Defendants as a result of such business practices, pursuant to the California Business and Professions Code, Sections 17203 and 17204.

### TWENTY-SEVENTH CLAIM FOR RELIEF
**Violation of the District of Columbia Consumer Protection Procedures Act,**
**D.C. Code § 28-3901,** *et seq.*
**(On Behalf of the District of Columbia Class)**

337.   Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

338.   Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of District of Columbia Code § 28-3901, *et seq.*

339.   Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining at artificial and/or non-competitive levels, the prices at which German Luxury Vehicles were sold, distributed or obtained in the District of Columbia.

340.   The foregoing conduct constitutes "unlawful trade practices," within the meaning of D.C. Code § 28-3904. Plaintiffs and members of the Damages Class were not aware of Defendants' conspiracy to artificially raise prices and were therefore unaware that they were being unfairly and illegally overcharged. There was a gross disparity of bargaining power between the parties with respect to the price charged by Defendants for

---

CLASS ACTION COMPLAINT

German Luxury Vehicles. Defendants had the sole power to set that price and Plaintiffs and members of the Damages Class had no power to negotiate a lower price.

341.    Moreover, Plaintiffs and members of the Damages Class lacked any meaningful choice in purchasing German Luxury Vehicles because they were unaware of the unlawful overcharge and there was no alternative source of supply through which Plaintiffs and members of the Damages Class could avoid the overcharges. Defendants' conduct with regard to sales of German Luxury Vehicles, including their illegal conspiracy to raise the prices of German Luxury Vehicles to supra-competitive, artificially high levels, was substantively unconscionable because it was one-sided and unfairly benefited Defendants at the expense of Plaintiffs and members of the Damages Class.

342.    Defendants took grossly unfair advantage of Plaintiffs and members of the Damages Class. The suppression of competition that has resulted from Defendants' conspiracy has ultimately resulted in unconscionably higher prices for consumers so that there was a gross disparity between the price paid and the value received for German Luxury Vehicles.

343.    Defendants' unlawful conduct had the following effects: (1) German Luxury Vehicles price competition was restrained, suppressed, and eliminated throughout the District of Columbia; (2) German Luxury Vehicles prices were raised, fixed, maintained, and stabilized at artificially high levels throughout the District of Columbia; (3) Plaintiffs

---

CLASS ACTION COMPLAINT

and the Damages Class were deprived of free and open competition; and (4) Plaintiffs and the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

344.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of District of Columbia Code § 28-3901, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

**TWENTY-EIGHTH CLAIM FOR RELIEF**
**Violation of the Florida Deceptive and Unfair Trade Practices Act,**
**Fla. Stat. § 501.201, *et seq.***
**(On Behalf of the Florida Class)**

345.   Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

346.   Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Florida Deceptive and Unfair Trade Practices Act, Fla. Stat. §§ 501.201, *et seq.*

347.   Defendants' unlawful conduct had the following effects: (1) German Luxury Vehicles price competition was restrained, suppressed, and eliminated throughout Florida; (2) German Luxury Vehicles prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Florida; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the

Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

348.   During the Class Period, Defendants' illegal conduct substantially affected Florida commerce and consumers.

349.   As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured and are threatened with further injury.

350.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Florida Stat. § 501.201, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

**TWENTY-NINTH CLAIM FOR RELIEF**
**Violation of the Hawaii Revised Statutes Annotated §§ 480-1, *et seq.***
**(On Behalf of Hawaii Class)**

351.   Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

352.   Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Hawaii Revised Statutes Annotated §§ 480-1, *et seq.*

353.   Defendants' unlawful conduct had the following effects: (1) German Luxury Vehicles price competition was restrained, suppressed, and eliminated throughout Hawaii; (2) German Luxury Vehicles prices were raised, fixed, maintained, and stabilized

at artificially high levels throughout Hawaii; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

354.    During the Class Period, Defendants' illegal conduct substantially affected Hawaii commerce and consumers.

355.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured and are threatened with further injury.

356.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Hawaii Rev. Stat. § 480, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

### THIRTIETH CLAIM FOR RELIEF
### Violation of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 Ill. Comp. Stat. Ann. 505/1, *et seq.* (On Behalf of the Illinois Class)

357.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

358.    By reason of the conduct alleged herein, Defendants have violated 815 Ill. Comp. Stat. Ann. 505/1, *et seq.* which prohibits "Unfair methods of competition and unfair or deceptive acts or practices, including but not limited to the use or employment of any deception fraud, false pretense, false promise, misrepresentation or the

concealment, suppression or omission of any material fact, with intent that others rely upon the concealment, suppression or omission."

359.    Defendants' unlawful conduct had the following effects: (1) German Luxury Vehicles price competition was restrained, suppressed, and eliminated throughout Illinois; (2) German Luxury Vehicles prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Illinois; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles. Defendants' conduct was unfair, unconscionable, or deceptive within the conduct of commerce within the State of Illinois.

360.    Defendants' conduct misled consumers, withheld material facts, and resulted in material misrepresentations to Plaintiffs and members of the Damages Classes.

361.    Defendants' unlawful conduct substantially affected Illinois's trade and commerce.

362.    As a direct and proximate cause of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class were actually deceived and have been injured in their business or property and are threatened with further injury.

363.    By the reason of the foregoing, Plaintiffs and members of the Damages Class are entitled to seek all forms of relief, including actual damages or any other relief the Court deems proper under 815 Ill. Comp. Stat. Ann. 505/10a.

CLASS ACTION COMPLAINT

## THIRTY-FIRST CLAIM FOR RELIEF
### Violation of the Massachusetts Consumer Protection Act,
### Mass. Gen. Laws Ch. 93A § 1, *et seq.*
### (On Behalf of the Massachusetts Class)

364.   Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

365.   Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of Mass. G.L. c. 93A, §2.

366.   Defendants were engaged in trade or commerce as defined by G.L. c. 93A.

367.   Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market which includes Massachusetts, by affecting, fixing, controlling and/or maintaining at artificial or non-competitive levels, the prices at which German Luxury Vehicles were sold, distributed, or obtained in Massachusetts and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

368.   Defendants' unlawful conduct had the following effects: (1) German Luxury Vehicles price competition was restrained, suppressed, and eliminated throughout Massachusetts; (2) German Luxury Vehicles prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Massachusetts; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

369.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class were injured and are threatened with further injury.

370.    Certain of the Defendants have or will be served with a demand letter in accordance with G.L. c. 93A, § 9, or, upon information and belief, such service of a demand letter was unnecessary due to each such Defendant not maintaining a place of business within the Commonwealth of Massachusetts or not keeping assets within the Commonwealth.

371.    By reason of the foregoing, Defendants engaged in unfair competition and unfair or deceptive acts or practices, in violation of G.L. c. 93A, §2. Defendants' and their coconspirators' violations of Chapter 93A were knowing or willful, entitling Plaintiffs and members of the Damages Class to multiple damages.

### THIRTY-SECOND CLAIM FOR RELIEF
### Violation of the Michigan Consumer Protection Act,
### Mich. Comp. Laws Ann. § 445.901, *et seq.*
### (On Behalf of the Michigan Class)

372.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

373.    By reason of the conduct alleged herein, Defendants have violated Mich. Comp. Laws Ann. § 445.901, *et seq.*, which prohibits "Unfair, unconscionable, or deceptive methods, acts, or practices in the conduct of trade or commerce."

374.    Defendants' unlawful conduct had the following effects: (1) German Luxury Vehicles price competition was restrained, suppressed, and eliminated throughout

Michigan (2) German Luxury Vehicles prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Michigan; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

375.    Defendants' conduct was conducted with the intent to deceive Michigan consumers regarding the nature of Defendants' actions within the stream of Michigan commerce.

376.    Defendants' conduct was unfair, unconscionable, or deceptive within the conduct of commerce within the State of Michigan.

377.    Defendants' conduct misled consumers, withheld material facts, and took advantage of Plaintiffs and members of the Damages Classes' inability to protect themselves.

378.    Defendants' unlawful conduct substantially affected Michigan's trade and commerce.

379.    As a direct and proximate cause of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business or property and are threatened with further injury.

## THIRTY-THIRD CLAIM FOR RELIEF
### Violation of the Minnesota Consumer Fraud Act,
### Minn. Stat. § 325F.68, *et seq.*
### (On Behalf of the Minnesota Class)

380.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

381.    By reason of the conduct alleged herein, Defendants have violated Minn. Stat. § 325F.68, *et seq.* Minn. Stat. § 325F.69 makes it unlawful for any person to "act, use, or employ… fraud, false pretense, false promise, misrepresentation, misleading statement or deceptive practice, with the intent that others rely thereon in connection with the sale of any merchandise, whether or not any person has in fact been misled, deceived, or damaged thereby."

382.    Defendants engaged in a deceptive trade practice with the intent to injure competitors and consumers through supra-competitive profits.

383.    Defendants' conduct was false, fraudulent, misleading, and deceptive within the conduct of commerce within the State of Minnesota.

384.    Defendants' conduct, specifically in the form of fraudulent concealment of their horizontal agreement, created a fraudulent or deceptive act or practice committed by a supplier in connection with a consumer transaction.

385.    Defendants' unlawful conduct substantially affected Minnesota's trade and commerce.

386.    Defendants' conduct was willful.

387.    As a direct and proximate cause of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business or property and are threatened with further injury.

388.    By reason of the foregoing, the Plaintiffs and members of the Damages Class are entitled to seek all forms of relief, including damages, reasonable attorneys' fees and costs under Minn. Stat. § 325F.68, *et seq.* and Minn. Stat. § 8.31, subd. 3.

### THIRTY-FOURTH CLAIM FOR RELIEF
### Violation of the Missouri Merchandising Practices Act,
### Mo. Ann. Stat. § 407.010, *et seq.*
### (On Behalf of the Missouri Class)

389.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

390.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Missouri Merchandising Practices Act, Mo. Rev. Stat. § 407.010, *et. seq.*

391.    Plaintiffs and members of the Damages Class purchased German Luxury Vehicles for personal, family, or household purposes.

392.    Defendants engaged in the conduct described herein in connection with the sale of German Luxury Vehicles in trade or commerce in a market that includes Missouri.

393.    Defendants and their co-conspirators agreed to, and did in fact, affect, fix, control, and/or maintain, at artificial and non-competitive levels, the prices at which German Luxury Vehicles were sold, distributed, or obtained in Missouri, which conduct

---

CLASS ACTION COMPLAINT

constituted unfair practices in that it was unlawful under federal and state law, violated public policy, was unethical, oppressive and unscrupulous, and caused substantial injury to Plaintiffs and members of the Damages Class.

394.   Defendants concealed, suppressed, and omitted to disclose material facts to Plaintiffs and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for German Luxury Vehicles. The concealed, suppressed, and omitted facts would have been important to Plaintiffs and members of the Damages Class as they related to the cost of German Luxury Vehicles they purchased.

395.   Defendants misrepresented the real cause of price increases and/or the absence of price reductions in German Luxury Vehicles by making public statements that were not in accord with the facts.

396.   Defendants' statements and conduct concerning the price of German Luxury Vehicles were deceptive as they had the tendency or capacity to mislead Plaintiffs and members of the Damages Class to believe that they were purchasing German Luxury Vehicles at prices established by a free and fair market.

397.   Defendants' unlawful conduct had the following effects: (1) German Luxury Vehicles price competition was restrained, suppressed, and eliminated throughout Missouri; (2) German Luxury Vehicles prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Missouri; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and

---

CLASS ACTION COMPLAINT

members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

398.   The foregoing acts and practices constituted unlawful practices in violation of the Missouri Merchandising Practices Act.

399.   As a direct and proximate result of the above-described unlawful practices, Plaintiffs and members of the Damages Class suffered ascertainable loss of money or property.

400.   Accordingly, Plaintiffs and members of the Damages Class seek all relief available under Missouri's Merchandising Practices Act, specifically Mo. Rev. Stat. § 407.020, which prohibits "the act, use or employment by any person of any deception, fraud, false pretense, false promise, misrepresentation, unfair practice or the concealment, suppression, or omission of any material fact in connection with the sale or advertisement of any merchandise in trade or commerce...," as further interpreted by the Missouri Code of State Regulations, 15 CSR 60-7.010, *et seq.*, 15 CSR 60-8.010, *et seq.*, and 15 CSR 60-9.010, *et seq.*, and Mo. Rev. Stat. § 407.025, which provides for the relief sought in this count.

## THIRTY-FIFTH CLAIM FOR RELIEF
### Violation of the Montana Unfair Trade Practices and Consumer Protection Act of 1973,
### Mont. Code §§ 30-14-201, *et. seq.*
### (On Behalf of the Montana Class)

401.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

402.    Defendants have engaged in unfair competition in violation of the Mont. Code, §§ 30-14-201, *et seq.*

403.    Defendants' unlawful conduct had the following effects: (1) German Luxury Vehicles price competition was restrained, suppressed, and eliminated throughout Montana; (2) German Luxury Vehicles prices were raised, fixed, maintained, and stabilized at artificially high levels throughout; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

404.    During the Class Period, Defendants' illegal conduct substantially affected Montana commerce and consumers.

405.    As a direct and proximate result of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured and are threatened with further injury.

---

CLASS ACTION COMPLAINT

116

406.    Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Mont. Code, §§ 30-14-201, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

### THIRTY-SIXTH CLAIM FOR RELIEF
### Violation of the Nebraska Consumer Protection Act,
### Neb. Rev. Stat. § 59-1601, *et seq.*
### (On Behalf of the Nebraska Class)

407.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

408.    By reason of the conduct alleged herein, Defendants have violated Neb. Rev. Stat. § 59-1601, *et seq.*

409.    Defendants have entered into a contract, conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the German Luxury Vehicles Market, a substantial part of which occurred within Nebraska.

410.    Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the German Luxury Vehicles Market, for the purpose of excluding or limiting competition or controlling or maintaining prices, a substantial part of which occurred within Nebraska.

411.    Defendants' conduct was conducted with the intent to deceive Nebraska consumers regarding the nature of Defendants' actions within the stream of Nebraska commerce.

---

CLASS ACTION COMPLAINT

412.   Defendants' conduct was unfair, unconscionable, or deceptive within the conduct of commerce within the State of Nebraska.

413.   Defendants' conduct misled consumers, withheld material facts, and had a direct or indirect impact upon Plaintiffs' and members of the Damages Class' ability to protect themselves.

414.   Defendants' unlawful conduct substantially affected Nebraska's trade and commerce.

415.   As a direct proximate cause of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business or property and are threatened with further injury.

416.   By reason of the foregoing, Plaintiffs and members of the Damages Class are entitled to seek all forms of relief available under Neb. Rev. Stat. § 59-1601, *et seq.*

### THIRTY-SEVENTH CLAIM FOR RELIEF
### Violation of the Nevada Deceptive Trade Practices Act,
### Nev. Rev. Stat. § 598.0903, *et seq.*
### (On Behalf of the Nevada Class)

417.   Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

418.   By reason of the conduct alleged herein, Defendants have violated Nev. Rev. Stat. § 598.0903, *et seq.*

419.   Defendants engaged in a deceptive trade practice with the intent to injure competitors and to substantially lessen competition.

---

CLASS ACTION COMPLAINT

420.   Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the German Luxury Vehicles Market, a substantial part of which occurred within Nevada, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the German Luxury Vehicles Market.

421.   Defendants' conduct was unfair, unconscionable, or deceptive within the conduct of commerce within the State of Nevada.

422.   Defendants' conduct amounted to a fraudulent act or practice committed by a supplier in connection with a consumer transaction.

423.   Defendants' unlawful conduct substantially affected Nevada's  trade and commerce.

424.   Defendants' conduct was willful.

425.   As a direct and proximate cause of Defendants' unlawful conduct, the members of the Nevada Class have been injured in their business or property and  are threatened with further injury.

426.   By reason of the foregoing, the Damages Class is entitled to seek all forms of relief, including damages, reasonable attorneys' fees and costs, and a civil penalty of up to $5,000 per violation under Nev. Rev. Stat. § 598.0993.

## THIRTY-EIGHTH CLAIM FOR RELIEF
### Violation of the New Hampshire Consumer Protection Act, N.H. Rev. Stat. Ann. Tit. XXXI, § 358-A, *et seq.* (On Behalf of the New Hampshire Class)

427.   Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

428.   By reason of the conduct alleged herein, Defendants have violated N.H. Rev. Stat. Ann. tit. XXXI, § 358-A, *et seq*.

429.   Defendants have entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the German Luxury Vehicles Market, a substantial part of which occurred within New Hampshire.

430.   Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the German Luxury Vehicles Market, for the purpose of excluding or limiting competition or controlling or maintaining prices, a substantial part of which occurred within New Hampshire.

431.   Defendants' conduct was conducted with the intent to deceive New Hampshire consumers regarding the nature of Defendants' actions within the stream of New Hampshire commerce.

432.   Defendants' conduct was unfair or deceptive within the conduct of commerce within the State of New Hampshire.

433.   Defendants' conduct was willful and knowing.

---

CLASS ACTION COMPLAINT

434.   Defendants' conduct misled consumers, withheld material facts, and had a direct or indirect impact upon Plaintiffs and members of the Damages classes' ability to protect themselves.

435.   Defendants' unlawful conduct substantially affected New Hampshire's trade and commerce.

436.   As a direct and proximate cause of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business or property and are threatened with further injury.

437.   By reason of the foregoing, Plaintiffs and members of the Damages Class are entitled to seek all forms of relief available under N.H. Rev. Ann. tit. XXXI, §§ 358-A:10 and 358-A:10-a.

**THIRTY-NINTH CLAIM FOR RELIEF**
**Violation of the New Mexico Unfair Practices Act,**
**N.M. Stat. Ann. §§ 57-12-3, *et seq.***
**(On Behalf of the New Mexico Class)**

438.   Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

439.   Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the New Mexico Stat. § 57-12-1, *et seq.*

440.   Defendants and their co-conspirators agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining at noncompetitive and artificially inflated levels, the prices at which German Luxury

Vehicles were sold, distributed or obtained in New Mexico and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

441.   The aforementioned conduct on the part of Defendants constituted "unconscionable trade practices," in violation of N.M.S.A. Stat. § 57-12-3, in that such conduct, *inter alia*, resulted in a gross disparity between the value received by Plaintiffs and members of the Damages Class and the prices paid by them for German Luxury Vehicles as set forth in N.M.S.A., § 57-12-2E. Plaintiffs and members of the Damages Class were not aware of Defendants' conspiracy to artificially inflate the prices of German Luxury Vehicles and were therefore unaware that they were being unfairly and illegally overcharged. There was a gross disparity of bargaining power between the parties with respect to the price charged by Defendants for German Luxury Vehicles. Defendants had the sole power to set that price and Plaintiffs and members of the Damages Class had no power to negotiate a lower price. Moreover, Plaintiffs and members of the Damages Class lacked any meaningful choice in purchasing German Luxury Vehicles because they were unaware of the unlawful overcharge and there was no alternative source of supply through which Plaintiffs and members of the Damages Class could avoid the overcharges.

442.   Defendants' conduct with regard to sales of German Luxury Vehicles, including their illegal conspiracy to secretly fix the price of German Luxury Vehicles at supra-competitive levels and overcharge consumers, was substantively unconscionable

---

CLASS ACTION COMPLAINT

because it was one-sided and unfairly benefited Defendants at the expense of Plaintiffs and members of the Damages Class.

443.   Defendants took grossly unfair advantage of Plaintiffs and members of the Damages Class. The suppression of competition that has resulted from Defendants' conspiracy has ultimately resulted in unconscionably higher prices for Plaintiffs and members of the Damages Class so that there was a gross disparity between the price paid and the value received for German Luxury Vehicles.

444.   Defendants' unlawful conduct had the following effects: (1) German Luxury Vehicles price competition was restrained, suppressed, and eliminated throughout New Mexico; (2) German Luxury Vehicles prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New Mexico; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

445.   During the Class Period, Defendants' illegal conduct substantially affected New Mexico commerce and consumers.

446.   As a direct and proximate result of the unlawful conduct of Defendants, Plaintiffs and members of the Damages Class have been injured and are threatened with further injury.

---

CLASS ACTION COMPLAINT

447.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of New Mexico Stat. § 57-12-1, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

**FORTIETH CLAIM FOR RELIEF**
**Violation of New York Unfair Trade Practices Act**
**N.Y. Gen. Bus. Law § 349, *et seq.***
**(on Behalf of New York Class)**

448.   Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

449.   Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of N.Y. Gen. Bus. Law § 349, *et seq.*

450.   Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling and/or maintaining, at artificial and non-competitive levels, the prices at which German Luxury Vehicles were sold, distributed or obtained in New York and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

451.   Defendants and their co-conspirators made public statements about the prices of German Luxury Vehicles that Defendants knew would be seen by New York consumers; such statements either omitted material information that rendered the statements that they made materially misleading or affirmatively misrepresented the real cause of price increases for German Luxury Vehicles; and Defendants alone possessed

material information that was relevant to consumers, but failed to provide the information.

452.   Because of Defendants' unlawful trade practices in the State of New York, New York consumer class members who purchased German Luxury Vehicles were misled to believe that they were paying a fair price for German Luxury Vehicles or the price increases for German Luxury Vehicles were for valid business reasons; and similarly situated consumers were potentially affected by Defendants' conspiracy.

453.   Defendants knew that their unlawful trade practices with respect to pricing German Luxury Vehicles would have an impact on New York consumers and not just Defendants' direct customers.

454.   Defendants knew that their unlawful trade practices with respect to pricing German Luxury Vehicles would have a broad impact, causing Damages Class Members who purchased German Luxury Vehicles to be injured by paying more for German Luxury Vehicles than they would have paid in the absence of Defendants' unlawful trade acts and practices.

455.   The conduct of Defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of N.Y. Gen. Bus. Law § 349, which resulted in consumer injury and broad adverse impact on the public at large, and harmed the public interest of New York State in an honest marketplace in which economic activity is conducted in a competitive manner.

CLASS ACTION COMPLAINT

456.    Defendants' unlawful conduct had the following effects: (1) German Luxury Vehicles price competition was restrained, suppressed, and eliminated throughout New York; (2) German Luxury Vehicles prices were raised, fixed, maintained, and stabilized at artificially high levels throughout New York; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

457.    During the Class Period, Defendants marketed, sold, or distributed German Luxury Vehicles in New York, and Defendants' illegal conduct substantially affected New York commerce and consumers.

458.    During the Class Period, each Defendant named herein, directly, or indirectly and through affiliates they dominated and controlled, manufactured, sold or distributed German Luxury Vehicles in New York.

459.    Plaintiffs and members of the Damages Class seek all relief available pursuant to N.Y. Gen. Bus. Law § 349 (h).

### FORTY-FIRST CLAIM FOR RELIEF
### Violation of the North Carolina Unfair Trade and Business Practices Act, N.C. Gen. Stat. § 75-1.1, *et seq.*
### (On Behalf of the North Carolina Class)

460.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

---

CLASS ACTION COMPLAINT

461.    Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1.1, *et seq.*

462.    Defendants agreed to, and did in fact, act in restraint of trade or commerce by affecting, fixing, controlling, and/or maintaining at artificial and non-competitive levels, the prices at which German Luxury Vehicles were sold, distributed or obtained in North Carolina and took efforts to conceal their agreements from Plaintiffs and members of the Damages Class.

463.    Defendants' price-fixing conspiracy could not have succeeded absent deceptive conduct by Defendants to cover up their illegal acts. Secrecy was integral to the formation, implementation and maintenance of Defendants' price-fixing conspiracy. Defendants committed inherently deceptive and self-concealing actions, of which Plaintiffs and members of the Damages Class could not possibly have been aware. Defendants and their co-conspirators publicly provided pre-textual and false justifications regarding their price increases. Defendants' public statements concerning the price of German Luxury Vehicles created the illusion of competitive pricing controlled by market forces rather than supra-competitive pricing driven by Defendants' illegal conduct. Moreover, Defendants deceptively concealed their unlawful activities by mutually agreeing not to divulge the existence of their conspiracy to outsiders, conducting meetings and conversations in secret, confining the plan to a small group of higher-level

officials at each company and avoiding the creation of documents which would reveal the antitrust violations.

464.    The conduct of Defendants described herein constitutes consumer-oriented deceptive acts or practices within the meaning of North Carolina law, which resulted in consumer injury and broad adverse impact on the public at large, and harmed the public interest of North Carolina consumers in an honest marketplace in which economic activity is conducted in a competitive manner.

465.    Defendants' unlawful conduct had the following effects: (1) German Luxury Vehicles price competition was restrained, suppressed, and eliminated throughout North Carolina; (2) German Luxury Vehicles prices were raised, fixed, maintained, and stabilized at artificially high levels throughout North Carolina; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

466.    During the Class Period, Defendants' marketed, sold, or distributed German Luxury Vehicles in North Carolina, and Defendants' illegal conduct substantially affected North Carolina commerce and consumers.

467.    During the Class Period, each Defendant named herein, directly, or indirectly and through affiliates they dominated and controlled, manufactured, sold or distributed German Luxury Vehicles in North Carolina.

CLASS ACTION COMPLAINT

468.    Plaintiffs and members of the Damages Class seek actual damages for their injuries caused by these violations in an amount to be determined at trial and are threatened with further injury. Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of North Carolina Gen. Stat. § 75-1.1, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

**FORTY-SECOND CLAIM FOR RELIEF**
**Violation of the Oregon Unlawful Trade Practices Act,**
**Or. Rev. Stat. § 646.607, *et seq.***
**(On Behalf of the Oregon Class)**

469.    Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

470.    By reason of the conduct alleged herein, Defendants have violated Or. Rev. Stat. § 646.607, *et seq.*

471.    Defendants employed unconscionable tactics in connection with the selling of German Luxury Vehicles, as described herein.

472.    Defendants intended to deceive Oregon consumers regarding the nature of Defendants' actions within the stream of Oregon commerce.

473.    Defendants' conduct was unfair or deceptive within the conduct of commerce within the State of Oregon.

474.   Defendants' conduct misled consumers, withheld material facts, and had a direct or indirect impact upon Plaintiffs' and members of the Damages Classes' ability to protect themselves.

475.   Defendants' unlawful conduct substantially affected Oregon's trade and commerce.

476.   As a direct and proximate cause of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business or property and are threatened with further injury.

477.   By reason of the foregoing, Plaintiffs and members of the Damages Class are entitled to seek all forms of relief available under Or. Rev. Stat. § 646.638.

478.   Pursuant to § 646.638 of the Oregon Unlawful Trade Practices Act, with the filing of this action, a copy of this Complaint is being served upon the Attorney General of Oregon.

**FORTY-THIRD CLAIM FOR RELIEF**
**Violation of the Rhode Island Deceptive Trade Practices Act,**
**R.I. Gen. Laws § 6-13.1-1, *et seq.***
**(On Behalf of the Rhode Island Class)**

479.   Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

480.   Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of the Rhode Island Unfair Trade Practice and Consumer Protection Act, R.I. Gen. Laws §§ 6-13.1-1, *et seq.*

CLASS ACTION COMPLAINT

481.    Members of this Damages Class purchased German Luxury Vehicles for personal, family, or household purposes.

482.    Defendants agreed to, and did in fact, act in restraint of trade or commerce in a market that includes Rhode Island, by affecting, fixing, controlling, and/or maintaining at artificial and non-competitive levels, the prices at which German Luxury Vehicles were sold, distributed, or obtained in Rhode Island.

483.    Defendants deliberately failed to disclose material facts to Plaintiffs and members of the Damages Class concerning Defendants' unlawful activities and artificially inflated prices for German Luxury Vehicles. Defendants owed a duty to disclose such facts. Defendants breached that duty by their silence. Defendants misrepresented to all Class Members during the Class Period that Defendants' German Luxury Vehicles prices were competitive and fair.

484.    Defendants' unlawful conduct had the following effects: (1) German Luxury Vehicles price competition was restrained, suppressed, and eliminated throughout Rhode Island; (2) German Luxury Vehicles prices were raised, fixed, maintained, and stabilized at artificially high levels throughout Rhode Island; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

---

CLASS ACTION COMPLAINT

485.   As a direct and proximate result of Defendants' violations of law, Plaintiffs and members of the Damages Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct, as described herein.

486.   Defendants' deception, including their affirmative misrepresentations and omissions concerning the price of German Luxury Vehicles, likely misled all Class Members acting reasonably under the circumstances to believe that they were purchasing German Luxury Vehicles at prices set by a free and fair market. Defendants' affirmative misrepresentations and omissions constitute information important to Plaintiffs and members of the Damages Class as they related to the cost of German Luxury Vehicles they purchased.

487.   Defendants have engaged in unfair competition or unfair or deceptive acts or practices in violation of Rhode Island Gen. Laws. § 6-13.1-1, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

**FORTY-FOURTH CLAIM FOR RELIEF**
**Violation of the South Dakota Deceptive Trade Practices and Consumer Protection Law,**
**S.D. Codified Laws § 37-24, *et seq.***
**(On Behalf of the South Dakota Class)**

488.   Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

---

CLASS ACTION COMPLAINT

489.   By reason of the conduct alleged herein, Defendants have violated S.D. Codified Laws § 37-24-6.

490.   Defendants engaged in a deceptive trade practice with the intent to injure competitors and consumers through supra-competitive profits.

491.   Defendants' established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the German Luxury Vehicles Market, a substantial part of which occurred within South Dakota, for the purpose of controlling, fixing, or maintaining prices in the German Luxury Vehicles Market.

492.   Defendants' conduct was unfair, unconscionable, or deceptive within the conduct of commerce within the State of South Dakota.

493.   Defendants' conduct amounted to a fraudulent or deceptive act or practice committed by a supplier in connection with a consumer transaction.

494.   Defendants' unlawful conduct substantially affected South Dakota's trade and commerce.

495.   Defendants' conduct was willful.

496.   As a direct and proximate cause of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business or property and are threatened with further injury.

497.   By reason of the foregoing, Plaintiffs and members of the Damages Class are entitled to seek all forms of relief, including actual damage and injunctive relief under S.D. Codified Laws § 37-24-31.

## FORTY-FIFTH CLAIM FOR RELIEF
### Violation of the Utah Unfair Practices Act,
### Utah Code All. §§ 13-5-1, *et seq.*
### (On Behalf of the Utah Class)

498.   Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

499.   By reason of the conduct alleged herein, Defendants have violated Utah Code Ann. §§ 13-5-1, *et seq.*

500.   Defendants entered into a contract, combination, or conspiracy between two or more persons in restraint of, or to monopolize, trade or commerce in the German Luxury Vehicles market, a substantial part of which occurred within Utah.

501.   Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the German Luxury Vehicles market, a substantial part of which occurred within Utah.

502.   Defendants established, maintained, or used a monopoly, or attempted to establish a monopoly, of trade or commerce in the German Luxury Vehicle Market, a substantial part of which occurred within Utah, for the purpose of excluding competition or controlling, fixing, or maintaining prices in the German Luxury Vehicle Market.

---

CLASS ACTION COMPLAINT

503.   Defendants' conduct caused or was intended to cause unfair methods of competition within the State of Utah.

504.   Defendants' unlawful conduct substantially affected Utah's trade and commerce.

505.   As a direct and proximate cause of Defendants' unlawful conduct, Plaintiffs and members of the Damages Class have been injured in their business or property and are threatened with further injury.

506.   By reason of the foregoing, Plaintiffs and members of the Damages Class are entitled to seek all forms of relief, including actual damages or $2000 per Damages Class member, whichever is greater, plus reasonable attorney's fees under Utah Code Ann. §§ 13-5-14, *et seq.*

### FORTY-SIXTH CLAIM FOR RELIEF
**Violation of Vt. Stat. Ann. §§ 2451, *et seq.***
**(On Behalf of the Vermont Class)**

507.   Plaintiffs incorporate and reallege, as though fully set forth herein, each and every allegation set forth in the preceding paragraphs of this Complaint.

508.   Defendants have engaged in unfair competition or unfair, unconscionable, or deceptive acts or practices in violation of 9 Vermont § 2451, *et seq.*

509.   Defendants and their co-conspirators agreed to, and did in fact, raise the prices of German Luxury Vehicles by affecting, fixing, controlling, and/or maintaining at

---

CLASS ACTION COMPLAINT

artificial and non-competitive levels, the prices at which German Luxury Vehicles were sold, distributed, or obtained in Vermont.

510.  Defendants deliberately failed to disclose material facts to Plaintiffs and members of the Damages Class concerning their unlawful activities and artificially inflated prices for German Luxury Vehicles. Defendants owed a duty to disclose such facts, and Defendants breached that duty by their silence. Defendants misrepresented to all purchasers during the Class Period that their German Luxury Vehicles prices were competitive and fair. Defendants' unlawful conduct had the following effects: (1) German Luxury Vehicles price competition was restrained, suppressed, and eliminated throughout Vermont; (2) German Luxury Vehicles prices were raised, fixed, maintained, and stabilized at artificially high levels throughout; (3) Plaintiffs and members of the Damages Class were deprived of free and open competition; and (4) Plaintiffs and members of the Damages Class paid supra-competitive, artificially inflated prices for German Luxury Vehicles.

511.  As a direct and proximate result of Defendants' violations of law, Plaintiffs and members of the Damages Class suffered an ascertainable loss of money or property as a result of Defendants' use or employment of unconscionable and deceptive commercial practices as set forth above. That loss was caused by Defendants' willful and deceptive conduct, as described herein.

---

CLASS ACTION COMPLAINT

512.   Defendants' deception, including their omissions concerning the price of German Luxury Vehicles, likely misled all purchasers acting reasonably under the circumstances to believe that they were purchasing German Luxury Vehicles at prices born by a free and fair market. Defendants' misleading conduct and unconscionable activities constitutes unfair competition or unfair or deceptive acts or practices in violation of 9 Vermont § 2451, *et seq.*, and, accordingly, Plaintiffs and members of the Damages Class seek all relief available under that statute.

## XI.   UNJUST ENRICHMENT

### FORTY-SEVENTH CLAIM FOR RELIEF
### Unjust Enrichment
### (on behalf of Plaintiffs and the Damages Class)

513.   Plaintiffs incorporate by reference the allegations in the preceding paragraphs.

514.   Plaintiffs bring this claim under the laws of all states of the Damages Class, *supra*.

515.   As a result of their unlawful conduct described above, Defendants have and will continue to be unjustly enriched. Defendants have been unjustly enriched by the receipt of, at a minimum, unlawfully inflated prices and unlawful profits on sales of German Luxury Vehicles.

516.   Defendants have benefited from their unlawful acts and it would be inequitable for Defendants to be permitted to retain any of the ill-gotten gains resulting

from the overpayments made by Plaintiffs or members of the Damages Class for German Luxury Vehicles.

517.    Plaintiffs and members of the Damages Class are entitled to the amount of Defendants' ill-gotten gains resulting from their unlawful, unjust, and inequitable conduct. Plaintiffs and members of the Damages Class are entitled to the establishment of a constructive trust consisting of all ill-gotten gains from which Plaintiffs and members of the Damages Class may make claims on a pro rata basis.

518.    Pursuit of any remedies against the firms from which Plaintiffs and members of the Damages Class purchased Vehicles containing German Luxury Vehicles subject to Defendants' conspiracy would have been futile.

## XII.    PRAYER FOR RELIEF

Plaintiffs, on behalf of themselves and the Classes of all others similarly situated, respectfully request judgment against Defendants, as follows:

A.    The Court determine that this action may be maintained as a class action under Rule 23(a), (b)(2) and (b)(3) of the Federal Rules of Civil Procedure, appoint Plaintiffs as Class Representatives and their counsel of record as Class Counsel, and direct that reasonable notice of this action, as provided by Rule 23(c)(2) of the Federal Rules of Civil Procedure, be given to the Classes, once certified;

B.    That the unlawful contract, combination, or conspiracy alleged herein be adjudged and decreed:

---

CLASS ACTION COMPLAINT

    i.     An unreasonable restraint of trade or commerce in violation of Section 1 of the Sherman Act;

    ii.    A per se violation of Section 1 of the Sherman Act;

    iii.   An unlawful combination, trust, agreement, understanding and/or concert of action in violation of the state antitrust, unfair competition and consumer protection laws as set forth herein; and

    iv.   Acts of unjust enrichment by Defendants as set forth herein.

C.    Plaintiffs and members of the Damages Class recover damages, to the maximum extent allowed under such laws, and that a joint and several judgment in favor of Plaintiffs and members of the Damages Class be entered against Defendants in an amount to be multiplied to the extent such laws permit;

D.    Plaintiffs and members of the Damages Class recover damages in the form of restitution and/or disgorgement of profits unlawfully gained from them;

E.    Defendants, their affiliates, successors, transferees, assignees and other officers, directors, partners, agents and employees thereof, and all other persons acting or claiming to act on their behalf or in concert with them, be permanently enjoined and restrained from in any manner continuing, maintaining or renewing the contract, combination, or conspiracy alleged herein, or from entering into any other contract, combination, or conspiracy having a similar purpose or effect, and from adopting or following any practice, plan, program, or device having a similar purpose or effect;

F.    Plaintiffs and members of the Damages Class be awarded restitution, including disgorgement of profits and revenues Defendants obtained as a result of their acts of unfair competition and acts of unjust enrichment;

CLASS ACTION COMPLAINT

G.    Plaintiffs and members of the Damages Class be awarded pre- and post-judgment interest as provided by law, and that such interest be awarded at the highest legal rate;

H.    Plaintiffs and members of the Classes recover their costs of suit, including reasonable attorneys' fees, as provided by law; and

I.    Plaintiffs and members of the Classes have such other and further relief as the case may require and the Court may deem just and proper.

## XIII.  JURY DEMAND

Pursuant to Fed. R. Civ. P. 38(b), Plaintiffs demand a trial by jury on all matters so triable.


Respectfully submitted,

**HELLMUTH & JOHNSON, PLLC**


Dated:  August 29, 2017          By: /s/ Jack A. Atnip_____
                                 Jack A. Atnip, CA Bar No. 204457
                                 8050 West 78th Street
                                 Edina, Minnesota  55439
                                 Tel: (952) 941-4005
                                 Fax:  (952) 941-2337
                                 Email: jatnip@hjlawfirm.com

CLASS ACTION COMPLAINT

*To be Admitted Pro Hac Vice:*
Richard M. Hagstrom, MN Bar No. 39445
Michael Cashman, MN Bar No. 206945
Anne T. Regan, MN Bar No. 333852
Nicholas S. Kuhlmann, MN Bar No. 33750X
8050 West 78th Street
Edina, Minnesota 55439
Tel: (952) 941-4005
Fax: (952) 941-2337
Emails: rhagstrom@hjlawfirm.com
         mcashman@hjlawfirm.com
         aregan@hjlawfirm.com
         nkuhlmann@hjlawfirm.com

-and-

*Of Counsel*

Roxanne Barton Conlin, IA Bar No. AT1642
**ROXANNE CONLIN &
ASSOCIATES, P.C.**
3721 S.W. 61st St., Ste. C
Des Moines, Iowa 50321
Tel: (515) 283-1111
Fax: (515) 282-0477
Email: roxlaw@aol.com

*Attorneys for Plaintiffs and Proposed Classes*

---

CLASS ACTION COMPLAINT